346 S.E.2d 551

**HARDMAN TRUCKING, INC.**

**v.**

**POLING TRUCKING CO., INC., et al.**

**No. 16695.**

Supreme Court of Appeals
of West Virginia.

June 27, 1986.

**576**

James C. West, Jr., Larry O. Ford, Jones, Williams, West & Jones, Clarksburg, for appellant.

James A. Varner, Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, for appellee.

PER CURIAM:

This is an appeal by Hardman Trucking Company, Inc., the plaintiff below (herein-after Hardman Trucking), from a final order of the Circuit Court of Randolph County which granted the post-trial motions of the defendants to set aside a jury verdict or to remit a portion of the damages awarded by the jury.

Hardman Trucking brought an action to recover damages resulting from a collision between one of its Ford triaxle dump trucks and an International triaxle dump truck belonging to James Foltz. The defendants were owner Foltz; lessee Poling Trucking Co.; driver James L. Davis; Truck Owners, Inc., a corporation with whom Foltz had a contract to haul coal; Preston Motors, Inc., a corporation that sold the truck to Foltz; and Super City Manufacturing, Inc., the manufacturer and installer of the truck's dump bed. Hardman Trucking sought recovery of damages for injury to its vehicle, lost profits while the truck was undergoing repairs, loss of the stone being hauled, towing services, annoyance and inconvenience. Hardman Trucking also claimed entitlement to prejudgment interest.

The defendants admitted liability. A jury trial on damages alone took place on March 27 and 28, 1984. The jury awarded Hardman Trucking $56,010.78. The elements comprising the award were itemized as follows: Repair to truck and bed—$35,-600.00; loss of net profits—$18,000.00; tow bill—$310.30; lost stone—$100.48; inconvenience—$2,000.00.

The trial judge entered a judgment order upon the verdict of the jury, but deferred making a determination on Hardman Trucking's entitlement to interest on the award. The defendants made motions to set aside the verdict and award a new trial, or alternatively, to order a remittitur. The defendants also moved to limit prejudgment interest. The court granted the motions, ruling that the verdicts awarding damages for repair of the truck, lost profits and inconvenience would be set aside. A new trial was granted.[1] The court per-

---

1. As an alternative to a new trial, the appellant was offered the option of accepting a reduced verdict in the amount of $36,268.67. Although the trial judge did not explain how he calculated the amount by which the verdict would be re- duced, it is apparent that the $56,010.78 was reduced by subtracting the amount of lost prof- its damages ($18,000) and inconvenience dam- ages ($2,000), then adding prejudgment interest in the amount of $257.89. The appellant did

mitted prejudgment interest only on the damages awarded for the towing bill and the lost stone.

Hardman Trucking assigns as error: (1) The use of an improper standard for measuring damages resulting from the injury to the truck; (2) the court's conclusion that the plaintiff failed to prove loss of profits; (3) the court's finding that the plaintiff failed to mitigate its damages; (4) the court's denial of prejudgment interest on lost profits and the cost of repairs; and (5) the court's denial of damages for inconvenience.

### Facts

On October 15, 1979, a 1978 Ford triaxle dump truck owned by Hardman Trucking was involved in a collision with a 1978 International triaxle dump truck. The Ford truck was taken to the repair shop of Paul Ours in Buckhannon. It was out of service from the date of the accident until July 16, 1980. Hardman Trucking paid Ours $26,954.57 for parts and labor related to repair of the exhaust system, frame, transmission, clutch, cab and other body parts. It was established at trial that some work performed by Ours was unrelated to the collision damage. A two-speed axle was installed at a cost of $1092.28. For maintenance necessitated by ordinary wear and tear, Ours charged $1392.92. There also were overcharges refunded by Ours in the amount of $1388.76. The cost of repairs performed by Ours, allegedly attributable to the damage resulting from the collision, thus totalled $23,080.61.

Additional work was performed by Alfab, Inc. of Smithville, including installation of a new dump bed and a new axle. Alfab's bill for parts and labor amounted to $12,190.

The following evidence was adduced with respect to the value of the appellant's truck. Richard Hardman, president of the appellant corporation, testified that he purchased the truck in March or April of 1978 for $48,000. At the time of the collision in October, 1979, it had been run for 80,000 miles. Richard Moneypenny, a former truck salesman, testified that he had seen the truck several times prior to the wreck and that, in his opinion, it had a fair market value of between $52,000 and $54,000. He explained that Hardman took good care of his vehicles and that its value would exceed the purchase price because of inflation. Ours estimated that prior to the wreck, the truck had a value of $35,000. No appraisal was performed subsequent to the accident. However, Ours testified that he had been told by a junk dealer that the truck might be worth $500 in its unrepaired condition.

The evidentiary basis for lost profits damages was a set of receipts showing gross income of $56,265.33, earned by the use of the truck for a comparable period in the previous year, October 15, 1978 through July 16, 1979. Deducted from the gross income were expenses totalling $21,-210.13. Mr. Hardman testified that the net profit was $22,916.31, although this figure does not account for $12,138.89. He further testified that the volume of business was about the same in both the sample period and the nine months the truck was out of service. Gerald Ramsburg, an official of a company for which the appellant hauled coal, testified that there would have been work for the truck had it been available.

Mr. Hardman was questioned about the income of his company, earned through the use of a fleet of five trucks and two bulldozers, as reflected in federal income tax returns. Taxable income for Hardman Trucking was shown to be $29,232.37 in 1978; $25,638.52 in 1979; $23,558.27 in 1980;[2] and $48,326.23 in 1981. Hardman was vigorously cross-examined concerning the fact that the net income for the entire

---

not accept this offer and has elected to challenge the order granting a new trial. Our review is therefore limited to the propriety of awarding a new trial. *See Stilwell v. Williams,* 476 So.2d 24 (Miss.1985); *Schoppe v. Applied Chemicals Div.,* 418 So.2d 833 (Miss.1982); *Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780 (Mo.1977); *Corabi v. Curtis Publishing Co.,* 437 Pa. 143, 151–52, 262 A.2d 665, 669 (1970).

**2.** The appellant took a deduction of approximately $36,000 in 1980 for the cost of repairing the damaged truck.

company only slightly exceeded the claim of net profits lost because one truck was out of service. He explained that the 1978 Ford was used much more frequently than the other trucks in the fleet.

Ramsburg testified that another independent trucker had gross earnings of $39,-107.99 from October 15, 1979 to July 16, 1980.

The appellant owned a sixth dump truck, a 1971 Ford. It was not a triaxle and had a smaller capacity than the damaged truck. This truck was not in running condition at the time of the wreck. Mr. Hardman testified that $1000 worth of repairs was necessary in order to put the 1971 truck back into service. He also felt it would not be feasible to use this truck as a replacement for the damaged triaxle dump truck because of its smaller capacity. Edgar Bligh, an owner/operator of a trucking business testified that triaxle trucks were preferred for long hauls, because it would not be economically feasible to use a truck with a smaller capacity.

Mr. Hardman was also asked about his failure to rent or lease a replacement truck. He replied that there were no trucks available for rent. This was corroborated by Ramsburg, who testified that it was impossible to rent a triaxle dump truck.

Other expenses claimed by the appellant as losses due to the accident were $310.30 for towing and $100.48 for the load of crushed stone being hauled by the truck at the time of the collision.

The appellees presented no evidence.

### Damages for injury to the truck

In awarding a new trial the judge concluded that the jury was erroneously instructed on the measure of damages and that the verdict was not supported by the evidence.

The appellant contends that the jury was instructed correctly on the measure of damages and that the trial judge therefore erred in setting aside the jury's verdict.

Syllabus point 2 of *Jarrett v. E. L. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362 (1977) provides:

When realty is injured the owner may recover the cost of repairing it, plus his expenses stemming from the injury, including loss of use during the repair period. If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover its lost value, plus his expenses stemming from the injury including loss of use during the time he has been deprived of his property.

Although *Jarrett* involved real property, we said that the rule for measurement of damages "would be similar to the rule about damage to personal property." 160 W.Va. at 404, 235 S.E.2d at 365.

In the case before us, the jury was instructed that the plaintiff may be entitled to recover the cost of repairing the truck so long as the costs of repair was less than the market value and provided that such costs resulted from the defendants' negligence. This was in accord with *Jarrett, supra.*

There was sufficient evidence to support the $35,600 verdict. There was testimony from Hardman, Moneypenny, and Ours from which the jury could fairly determine the market value of the truck. All the repair bills were introduced into evidence. The questions of which repairs, and the reasonable costs thereof, were attributable to the defendants' negligence, was properly presented to the jury for its determination.

Our test for the sufficiency of the evidence to support a jury verdict was recently restated in syllabus point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983):

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of

all favorable inferences which reasonably may be drawn from the facts proved.

Syllabus point 5 of *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880 (1975) provides: "The test in reviewing a judgment setting aside a jury verdict and awarding a new trial is whether the trial court's discretion in supervising verdicts, so as to prevent a miscarriage of justice, has been abused."

Because the jury was properly instructed and its verdict was supported by the evidence, we conclude that the trial judge abused his discretion by setting aside the verdict.

### Loss of Profits

The appellant's second assignment of error is that the court improperly set aside the jury verdict awarding $18,000 for lost profits. The trial judge's ruling was based on findings that the appellant failed to present proper proof of lost profits and failed to mitigate its damages.

 Loss of profits may be recoverable in tort actions. However, this Court has established stringent prerequisites to such recovery: "In order to recover for loss of profits as the result of a tort, they must be such as would be expected to follow naturally the wrongful act, and are certain both in their nature and the cause from which they proceed." Syl. pt. 2, *Ohio-West Virginia Co. v. Chesapeake & Ohio Railway Co.*, 97 W.Va. 61, 124 S.E. 587 (1924); *see also* syl. pt. 4, *Stewart v. Pollack-Forsch Co.*, 105 W.Va. 453, 143 S.E. 98 (1928); *State ex rel. Shatzer v. Freeport Coal Co.*, 144 W.Va. 178, 188–9, 107 S.E.2d 503, 510 (1959). Upon reviewing the trial record, we believe that the evidence was sufficient to present to the jury the issue of lost profits.

 The trial judge also concluded that, because of its failure to mitigate, the appellant was not entitled to any amount to compensate for lost profits. "As a general

rule a person whose property is endangered or injured must use reasonable care to mitigate the damages; but such person is only required to protect himself from the injurious consequence of the wrongful act by the exercise of ordinary effort and care and moderate expense." *Oresta v. Romano Bros., Inc.*, 137 W.Va. 633, 650, 73 S.E.2d 622, 632 (1952).

In a case where the possibility was raised that a vehicle owner might lessen his damages by renting a replacement, we said that "the plaintiff would not be entitled to recover the vehicle's earnings, but only the amount it would have cost him to replace the vehicle by renting one in its stead. If that had been shown to be impossible then the earnings of the vehicle, not including those of its driver, would have been relevant on the question of damages." *Somerville v. Dellosa*, 133 W.Va. 435, 445–46, 56 S.E.2d 756, 763 (1949).

The appellant's evidence was that it was impossible to lease a replacement vehicle. Both Hardman and Moneypenny testified that no triaxle dump trucks were available for lease. Although trucks with smaller capacities may have been available, there was testimony showing that use of smaller trucks may not have been economically practical. The jury had the opportunity to weigh the credibility of the witnesses and believe or disbelieve the testimony. They were instructed as to the effect of a failure to mitigate damages.[3] As we noted above, the verdict was lower than the amount claimed by the appellant as lost profit. A variety of factors may have produced this result. For example, the jury may have believed that additional expenses were not taken into account when computing past profits or that the appellant could have repaired the 1971 Ford and placed it back into service. In any of these circumstances, however, the jury might reasonably believe from the evidence that the

---

**3.** The instruction on mitigation reads as follows: The Court instructs the jury that it was the duty of the plaintiff to mitigate, that is lessen, any loss or damage which he claims to have sustained and if you believe from a preponderance of the evidence that plaintiff did not do so but on the contrary enlarged upon his claim for damages, then you may take that fact into consideration.

**580**

appellant would still have suffered some loss of profit.

Under these circumstances the jury verdict awarding $18,000 should not have been set aside. This portion of the trial court's order is therefore reversed.

## Prejudgment Interest

The trial judge allowed recovery of prejudgment interest on the amount of the tow bills and the loss of the stone. The appellant contends it is entitled to prejudgment interest on the damages awarded for loss of profits and costs of repair. The appellant concedes that it is not entitled to prejudgment interest on any recoverable amount for annoyance.

In *Bond v. City of Huntington,* 166 W.Va. 581, 276 S.E.2d 539 (1981), we held that an award of prejudgment interest on an ascertainable pecuniary loss was a proper element of damages in a tort action. We said, "the purpose of awarding interest as a part of the damages, where there is ascertainable pecuniary loss, is to fully compensate the injured party for the loss of the use of funds that have been expended." 166 W.Va. at 599, 276 S.E.2d at 548. With respect to the period of time for which prejudgment interest is recoverable, we said: "The interest is recoverable from the date the expense was incurred up to the date of the trial." 166 W.Va. at 600, 276 S.E.2d at 549.

■ Ascertainable pecuniary losses, upon which prejudgment interest as an element of compensatory damages may be awarded, are losses that are certain or capable of being rendered certain by reasonable calculation. *Bond v. City of Huntington, supra,* 166 W.Va. at 594–599, 276 S.E.2d at 546–48. *See also Kirk v. Pineville Mobile Homes, Inc.,* 172 W.Va. 693, 310 S.E.2d 210, 212 (1983).[4] In the case before us, the damages for lost profits and cost of repairs are reasonably susceptible to calculation and are therefore subject to prejudgment interest.

4. In *Kirk v. Pineville Mobile Homes, Inc., supra,* we noted that *W.Va.Code,* 56–6–31 [1981] includes lost income and damages to tangible personal property within the definition of "special

## Damages for inconvenience and annoyance

■ Finally, the appellant contends that the court erred in setting aside the verdict awarding $2,000 for damages due to inconvenience and annoyance. The arguments of both appellant and appellee are directed at the legal question of whether a corporation can recover such damages. We need not reach this issue because the trial judge based his ruling on a finding that the appellant presented no evidence of being inconvenienced. Upon review of the record, we believe the trial judge's determination was correct. Therefore, the award of damages for inconvenience was properly set aside.

In summary, the order of the trial court setting aside the jury verdict and granting a new trial is reversed, except that the portion of the order setting aside the verdict of $2,000 for inconvenience is affirmed; the order denying prejudgment interest is reversed; and this case is remanded to the Circuit Court of Randolph County for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

damages" upon which prejudgment interest is to be paid. 172 W.Va. at 695, 310 S.E.2d at 212, n. 1; *see also Ilosky v. Michelin Tire Corp.,* 172 W.Va. 435, 307 S.E.2d 603, 615 (1983).