382 S.E.2d 536

**Jerry GROVE, By and Through James N. GROVE, his Next Friend, and James N. Grove, Individually**

v.

**Freda A. MYERS.**

No. 18406.

Supreme Court of Appeals of West Virginia.

June 9, 1989.

Laura R. Tew, Greenberg & Tew, Martinsburg, for Jerry Grove, et al., etc.

Gray Silver, III, Avey & Steptoe, Martinsburg, for Freda A. Myers.

McHUGH, Justice:

This appeal presents us with the opportunity to decide the proper method of han-

dling prejudgment interest in a personal injury case and whether a prevailing plaintiff in such a case is entitled to recover in that case his or her reasonable attorney's fees from the defendant's liability insurer for its alleged failure to negotiate a settlement in good faith. This appeal also presents a question of whether the general damages awarded were inadequate. For the reasons hereinafter stated, we affirm the trial court's final order in part and reverse the same in part and remand this case with directions.

## I.

Jerry L. Grove, one of the appellants, was injured in June, 1984, when his bicycle collided with an automobile driven by the appellee, Freda A. Myers. He was twelve years old at the time of the collision. The collision caused a broken femur (thigh bone) in his left leg. The injured child was rendered unconscious soon after the collision. Immediately after the collision he remained in the hospital for three weeks, during the first two of which he was immobile while in traction. After this initial two-week period a steel plate was surgically implanted into his femur, and after this surgery he remained in the hospital for another week.

After he was released from the hospital Jerry walked with crutches for eight weeks. His older brother carried him up and down the stairs at his residence so that the injured child could use the bathroom. During this eight-week period on crutches, which was in the midst of summer, Jerry could not play ball, swim or otherwise play outside. During the first six weeks of school in the ensuing school year, he could not take gym class or play contact sports. After this last six-week period, the injured child was able to walk without crutches.

Not long thereafter the steel plate was surgically removed from Jerry's left thigh bone. He was in the hospital for two days for this second surgical operation. About a month after the second surgery his condition was back to normal—with no pain— except for a surgical incision scar on his left thigh approximately twelve inches in length and one and a half inches in width. He was sensitive about the scar, and other boys in gym class had made remarks about the scar as being "sick looking." There are no projected future medical problems associated with the broken femur.

Affidavits and counter-affidavits submitted after the trial indicate the following: Jerry's father, James N. Grove, one of the appellants, shortly after the accident contacted a sales agent of Nationwide Mutual Insurance Company, the appellee's automobile liability insurer. According to the appellants, the sales agent informed James Grove that Nationwide was denying liability for the appellee on the ground that the appellee was not negligent. The sales agent, however, denied making this statement, for he recognized that he as a sales agent had no authority to make such a statement for Nationwide. An adjuster with Nationwide contacted James Grove within two weeks after the accident. Mr. Grove told the adjuster that he was too busy to talk then and suggested calling back the next day. When the adjuster called back the next day, Mr. Grove informed the adjuster that Mr. Grove had retained an attorney and that the adjuster would have to talk to him.

The appellants' attorney subsequently demanded $37,500 to settle the case. Nationwide's adjuster countered with an offer of $12,000. Mr. Grove's hospital and physician's bills totalled $11,091.42, without interest, and Nationwide's investigation indicated that Jerry Grove's bicycle struck the appellee's car, not *vice versa*. The appellants immediately thereafter filed their complaint in this action. Nationwide then directed its attorney to withdraw the $12,000 settlement offer, purportedly to acknowledge that the appellants had rejected that offer by filing this action. The appellants over a year later communicated their increased demand of $49,500 to settle the case. Relying upon the discovery deposition of Jerry Grove, indicating, in Nationwide's opinion, his fault, Nationwide reduced its offer to settle to $5,000.

About two weeks prior to trial, the appellants offered to settle for $40,000, and Na-

tionwide increased its settlement offer to $15,000. On the day before trial the appellants' attorney showed Nationwide's attorney photographs of Jerry Grove's scar for the first time. Two hours later Nationwide increased its settlement offer to $20,000, which the appellants refused and countered with a demand of $30,000. Nationwide refused that demand and the case went to trial.

At trial, in June, 1987, the plaintiffs/appellants offered their instruction no. 18a, which required the jury to award prejudgment interest on any part of the verdict consisting of special damages or liquidated damages.[1] The trial court believed that the mandatory language of this instruction ("shall") was erroneous and refused to give the same. Given no alternative, the plaintiffs/appellants offered their instruction no. 18b, which authorized the jury, in its discretion, to award prejudgment interest on special damages or liquidated damages. The trial court gave the plaintiffs' instruction no. 18b containing the permissive language ("may").[2]

The jury returned a verdict finding the appellee 100% at fault for the appellants' damages.[3] James Grove was awarded the full amount of his medical bills, $11,091.42, without interest, and Jerry Grove was awarded $6,000 in general damages, consisting of $3,000 for past pain and suffering and $3,000 for scarring.

Jerry's father, James Grove, was unemployed during this litigation and none of the medical bills had been paid by the time of the trial. After deducting from the $6,000 award for general damages, the costs of litigation of $1,867.06 (medical expert's fee and deposition transcript fees) and a one-third contingency fee for the appellants' counsel of $5,697.14, Jerry Grove is left with a *deficit* amount of $1,564.20 for his pain and suffering and scarring.

The appellants moved for a new trial or, in the alternative, for a reasonable attorney's fee from Nationwide, raising the same issues raised here. The Circuit Court of Berkeley County ("the trial court") denied these motions. The trial court held: (1) it was within the jury's discretion to award prejudgment interest on the medical bills; (2) the damages awarded were not clearly inadequate; and (3) Nationwide was not responsible for the appellants' reasonable attorney's fee because it had attempted to negotiate a settlement in good faith.

On appeal the appellants challenge each of these three holdings.

## II.

### A. *Prejudgment Interest—Mandatory and Calculated by Trial Court*

■ *W.Va.Code*, 56–6–31 [1981] provides, in part, for the addition of prejudgment interest at the annual rate of ten percent on an award of special damages or liquidated damages. The term "special damages" is defined in that statute to in-

---

1. Plaintiffs' instruction no. 18a, which was refused by the trial court, was worded as follows:

    The Court instructs the jury that for any judgment or decree returned by you in favor of James Grove, or any part thereof, that is for special or liquidated damages (meaning an amount which may be ascertained, calculated or reduced to a sum certain) the jury *shall* award pre-judgment interest from the date such an amount became ascertainable until the date that the amount was returned by the jury in favor of the Plaintiff, James Grove.
    (emphasis added)

2. The instruction on prejudgment interest given to the jury was plaintiffs' instruction no. 18b:

    The Court instructs the jury that if you award damages to James Grove, you *may* also award interest on such amount of that figure

as the Plaintiff has demonstrated, by a preponderance of the evidence, represents the sum which is capable of being reduced to an ascertainable figure, by reasonable calculation, and you may award such prejudgment interest from the date the loss or expense was incurred or ascertainable through the date of this trial.
    (emphasis added)

3. During deliberations the jury sent a note to the trial court seeking clarification of the plaintiffs' negligence section of the special interrogatories/verdict form. The jury had been instructed that a person, such as Jerry Grove, who at the time of the accident was between the ages of seven and fourteen is rebuttably presumed to be incapable of contributory negligence. The appellee has not cross-assigned as error the jury's finding that she was 100% at fault.

clude "medical expenses ... and similar out-of-pocket expenditures, *as determined by the court.*" (emphasis added) Under that statute, "special or liquidated damages *shall* bear interest from the date the right to bring [an action for] the same shall have *accrued, as determined by the court.*" (emphasis added)[4] The appellants argue that an award of prejudgment interest under this statute is mandatory. We agree.

*W.Va.Code*, 56–6–31 [1981] uses mandatory language: "[S]pecial or liquidated damages shall bear interest[.]" "Shall" generally should be read as requiring action. *Weimer–Godwin v. Board of Education*, 179 W.Va. 423, 427, 369 S.E.2d 726, 730 (1988), *citing Manchin v. Browning*, 170 W.Va. 779, 785, 296 S.E.2d 909, 915 (1982). Other courts deciding this issue under similar statutes have held that prejudgment interest must be added to the damages recovered. Specifically, prejudgment interest is recoverable, not as a matter of discretion, but as a matter of right, that is, as a matter of law, in personal injury and wrongful death actions, unless the statute or court rule in question provides otherwise. *See State v. Phillips*, 470 P.2d 266, 272, 273–74 n. 27 (Alaska 1970); *Smith v. JBJ Ltd.*, 694 P.2d 352, 354 (Colo. Ct.App.1984); *Pray v. Narragansett Improvement Co.*, 434 A.2d 923, 930–31 (R.I. 1981); *In re Certification of Question from United States District Court*, 369 N.W.2d 658, 659 n. 1, 661 (S.D.1985). *See generally* Comment, *The Availability of Prejudgment Interest in Personal Injury and Wrongful Death Cases*, 16 U.S.F.L.Rev. 325 (1982) (citing, at 340 n. 110, fourteen of the states whose statutes or court rules at that time authorized recovery of prejudgment interest in personal injury and wrongful death cases); annotation, *Validity and Construction of State Statute or Rule Allowing or Changing Rate of Prejudgment Interest in Tort Actions*, 40 A.L.R. 4th 147 (1985), especially §§ 10–11.[5]

---

**4.** The portion of *W.Va.Code*, 56–6–31 [1981] pertaining to prejudgment interest provides in its entirety:

> [I]f the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages include[ ] lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law.

As this Court stated in *Bell v. Inland Mutual Insurance Co.*, 175 W.Va. 165, 175 n. 6, 332 S.E.2d 127, 137 n. 6, *appeal dismissed for want of jurisdiction and cert. denied sub nom. Camden Fire Insurance Association v. Justice*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985), the above quoted part of *W.Va.Code*, 56–6–31 [1981] is a partial codification of our holding in *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981), with respect to prejudgment interest in tort cases. In *Bond*, we extended to a particular type of damages in tort actions the traditional rule in contract actions that prejudgment interest is to be recovered. In both contexts prejudgment interest is to be recovered by a litigant as an element of compensatory damages "where there is an ascertainable pecuniary loss[.]" *Bond*, 166 W.Va. at 598, 276 S.E.2d at

**548.** *See also West Virginia v. United States*, 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639, 646 n. 2 (1987); *Weimer–Godwin v. Board of Education*, 179 W.Va. 423, 429, 369 S.E.2d 726, 732 (1988); *Hardman Trucking, Inc. v. Poling Trucking Co.*, 176 W.Va. 575, 580, 346 S.E.2d 551, 556 (1986); *Kirk v. Pineville Mobile Homes, Inc.*, 172 W.Va. 693, 694, 310 S.E.2d 210, 211–12 (1983); syl. pt. 12, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983).

**5.** An example of a statute similar to *W.Va.Code*, 56–6–31 [1981] is *.Colo.Rev.Stat.* § 13–21–101 (1987). It provides in pertinent part: "(1) ... [I]t is the duty of the court in entering judgment for the plaintiff in such [personal injury] action to add to the amount of damages assessed ..., interest on such amount[.]" Under this statute, the trial court must calculate and add the prejudgment interest. *Smith v. JBJ Ltd.*, 694 P.2d 352, 354 (Colo.Ct.App.1984).

In contrast to *W.Va.Code*, 56–6–31 [1981] is, for example, *Va.Code Ann.* § 8.01–382 (1984). The relevant portion thereof states: "[I]n any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of the court, *may* provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." (emphasis added) Under this statute, whether prejudgment interest should have been awarded and, if so, from what date such interest should run, were matters within the sound discretion of the fact finder. *Marks v. Sanzo*, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986).

The appellee relies, however, upon certain language of this Court in *Hardman Trucking, Inc. v. Poling Trucking Co.*, 176 W.Va. 575, 346 S.E.2d 551 (1986) (per curiam) which, according to the appellee, stands for the proposition that the recovery of prejudgment interest on special or liquidated damages is discretionary, not mandatory. The language in question is: "Ascertainable pecuniary losses, upon which prejudgment interest as an element of compensatory damages may be awarded, are losses that are certain or capable of being rendered certain by reasonable calculation." *Id.* 176 W.Va. at 580, 346 S.E.2d at 556. We do not believe this language means an award of prejudgment interest on special or liquidated damages, pursuant to *W.Va.Code*, 56–6–31 [1981], is permitted but not required.

In the first place, the issue under discussion in *Hardman Trucking* was not whether an award of prejudgment interest is mandatory or discretionary but, rather, whether lost profits and repair costs constitute ascertainable pecuniary losses, which are subject to prejudgment interest. Secondly, the word "may" in the above quoted language was used in the sense of "authorized to be awarded" or "within the power of the court to award," not in the sense of "permitted, but not required, to be awarded." *See Weimer–Godwin v. Board of Education*, 179 W.Va. 423, 427, 369 S.E.2d 726, 730 (1988); *Manchin v. Browning*, 170 W.Va. 779, 785, 296 S.E.2d 909, 915 (1982) ("may" generally should be read as conferring both permission and power). Finally, that "may" in *Hardman Trucking* meant "power," not "permission," in that case is indicated by the only language in *Hardman Trucking* specifically referring to *W.Va.Code*, 56–6–31 [1981]: "*W.Va.Code*, 56–6–31 [1981] includes lost income and damages to tangible personal property within the definition of 'special damages' upon which prejudgment interest *is* to be paid." *Hardman Trucking*, 176 W.Va. at 580 n. 4, 346 S.E.2d at 556 n. 4 (emphasis added).

■ Next, an issue related to whether the recovery of prejudgment interest is mandatory under *W.Va.Code*, 56–6–31 [1981] is whether the trial court, as opposed to the jury, is to make the calculation and add such interest to the award of special or liquidated damages. We hold that the trial court has that duty.

It is clear that *W.Va.Code*, 56–6–31 [1981], *see supra* note 4, requires the trial court to determine which damages are special damages and to determine the date on which the right to bring the action for such damages accrued. As to whether the trial court, not the jury, is to calculate and add the prejudgment interest under that statute, this Court is of the opinion that the logic of *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897 (1974), is also applicable here. In that case a statute declared that all interest pursuant to the terms of a contract providing for interest at a usurious rate shall be void. In an action alleging a violation of the usury statute, the jury found for the plaintiff. The trial court modified and expanded the jury's verdict by ruling that all interest provided by the contract was void.

On appeal to this Court the defendants argued that the trial court had invaded the province of the jury. This argument was rejected. Justice Haden, writing for a unanimous court on this point, held that when usury is proved, the statute, by operation of law, avoids all the interest involved in the usurious instrument, and "[t]he effective vehicle to implement the operative provisions of this law is the court and not the jury." *Id.* 157 W.Va. at 515–16, 207 S.E.2d at 920. Moreover, "[t]he avoidance [in the case of usury] or allowance of interest in the proper case [that is, when the applicability of the statute is established by the evidence,] is the command of the statute a court must follow to protect the legal efficacy of its judgment." *Id.* 157 W.Va. at 516, 207 S.E.2d at 920. Finally, "[t]he jury is to determine facts; the court must execute and apply the policy of the law." *Id.* 157 W.Va. at 515, 207 S.E.2d at 920.

Similarly, it has been specifically held elsewhere that the jury was not to be instructed as to prejudgment interest for calculation thereof by the jury, when the statute requires the court to add the prejudg-

ment interest onto the verdict. *Cartwright v. Atlas Chemical Industries, Inc.*, 593 P.2d 104, 120 (Okla.Ct.App.1978), *cert. denied* (Okla. Mar. 19, 1979). Even when the statute or court rule does not expressly require the court to calculate the prejudgment interest and add the same to the verdict, the calculation of prejudgment interest is not a jury function, unless the statute or court rule so provides. *See In re Certification of Question from United States District Court*, 369 N.W.2d 658, 659 n. 1, 662 (S.D.1985). Instead, the calculation of prejudgment interest is a matter which is ministerial in nature, not involving fact finding, a point recognized by those state legislatures which impose upon the clerk of the court the duty of calculating and adding prejudgment interest. *See, e.g., Pepin v. Beaulieu*, 102 N.H. 84, 88–89, 151 A.2d 230, 235 (1959); *Pray v. Narragansett Improvement Co.*, 434 A.2d 923, 930–31 (R.I.1981).

In fact, as stated by the court in *DiMeo v. Philbin*, 502 A.2d 825 (R.I.1986), it is reversible error for a trial court to advise the jury in such a manner that the jury is able to compute the amount of prejudgment interest which will be added by the court. "Human nature being what it is, it is highly unlikely that a jury, informed [directly or indirectly] of how much interest will be added [by the court], could prevent this information from influencing its decision on the amount of damages to be awarded." *Id.* at 826–27. In that case the trial court instructed the jury not to consider the matter of interest in arriving at a damage award, but informed them that prejudgment interest would be added at the rate of twelve percent per year and that the accident had occurred six years prior to trial, thus making it clear to the jury that whatever amount it awarded would be increased by seventy-two percent. The Supreme Court of Rhode Island agreed with the plaintiff that the trial court's detailed discussion of prejudgment interest was prejudicial to him. The court held that the trial court, upon inquiry by the jury, must

state only that the jury is not to consider prejudgment interest on damages subject to the same. *Id.* at 827.

Based upon all of the above, this Court holds that under *W.Va.Code*, 56–6–31, as amended, prejudgment interest on special or liquidated damages is recoverable as a matter of law and must be calculated and added to those damages by the trial court rather than by the jury.

■ A procedural point should be made here. Because prejudgment interest under *W.Va.Code*, 56–6–31 [1981] is to be recovered only on special or liquidated damages, a special interrogatory should be submitted to the jury for it to designate the amount of special or liquidated damages. *Kirk v. Pineville Mobile Homes, Inc.*, 172 W.Va. 693, ——, 310 S.E.2d 210, 213 (1983); *In re Certification of Question from United States District Court*, 369 N.W.2d 658, 662 (S.D.1985).[6] When this procedure is not followed and only a general verdict is returned, the plaintiff is entitled to prejudgment interest on the entire amount of the general verdict containing special or liquidated damages in unspecified amounts. *See* syl. pt. 3, *Kirk v. Pineville Mobile Homes, Inc.*, 172 W.Va. 693, 310 S.E.2d 210 (1983).

### B. *Prejudgment Interest—From Accrual of Cause of Action*

The next question is: when does the prejudgment interest under *W.Va.Code*, 56–6–31 [1981] begin to run? We hold that the statute, *see supra* note 4, contemplates the calculation of such interest commencing with the date on which the cause of action accrued.

The statute states that special or liquidated damages shall bear interest "from the date the right to bring the same shall have accrued[.]" This inexact language obviously means "from the date the right to bring [an action for] the same [such damages] shall have accrued[.]" "Accrue," for purposes of determining when a cause of

---

6. *W.Va.R.Civ.P.* 49(b) provides for general verdicts accompanied by the jury's answers to special interrogatories upon material issues of fact,

here, the amount of special or liquidated damages.

action accrues, ordinarily means to come into existence; to become vested. *Dunn v. Bank of Union,* 74 W.Va. 594, 599, 82 S.E. 758, 760 (1914). *See also Black's Law Dictionary* 19 (5th ed. 1979). In syllabus point 1 of *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986), this Court held that "[t]he statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues[,] which is when the injury is inflicted."

We agree with what was said in *State v. Phillips,* 470 P.2d 266 (Alaska 1970), with respect to when prejudgment interest begins to run: "For a cause of action to accrue, one party must have breached a duty to the other, and the other must have been injured. At the moment the cause of action accrued, the injured party was entitled to be left whole and became immediately entitled to be made whole." *Id.* at 274. Therefore, prejudgment "interest [runs] from the time the cause of action accrues," *id.,* that is, from the date of injury. *Guin v. Ha,* 591 P.2d 1281, 1284 (Alaska 1979). *See also Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973).

By providing in *W.Va.Code,* 56–6–31 [1981] that prejudgment interest on special or liquidated damages is to be computed from the date the cause of action accrued, the legislature implicitly decided to avoid the complications inherent in calculating prejudgment interest on each element of special or liquidated damages from the respective dates on which each element was incurred. "We recognize that damages are typically incurred intermittently through-

out the prejudgment period.... [para.] [A] system which would force litigants to determine precisely when each element of a plaintiff's damage award was incurred would impose an onerous burden on both the trial bench and bar." *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554–55 (Tex.1985). *Accord, Morgan v. Ceiling Fan Warehouse, Inc. No. 3,* 725 S.W.2d 715, 716 (Tex.1987).[7]

■ In view of the foregoing, this Court holds that under *W.Va.Code,* 56–6–31, as amended, prejudgment interest on special or liquidated damages is calculated from the date on which the cause of action accrued, which in a personal injury action is, ordinarily, when the injury is inflicted.

### C. *Prejudgment Interest—Special Damages Incurred but not Paid*

The most interesting question presented in this case is whether prejudgment interest is to be recovered on special or liquidated damages incurred but not paid by the plaintiff by the time of the trial. We hold in the affirmative.

While *W.Va.Code,* 56–6–31 [1981], *see supra* note 4, refers to "similar out-of-pocket expenditures" in defining special damages, the thrust of this language is to make general damages, such as pain and suffering, not subject to prejudgment interest. The statute does not require payment of medical expenses and the like by the plaintiff by the time of the trial. In our opinion the legislative intent was that medical and

7. In *Cavnar,* the Supreme Court of Texas believed that the computation of prejudgment interest from the date the cause of action accrued would overcompensate the plaintiff by awarding interest back to that date on those damages which are incurred after that date.

On the other hand, as quoted in the text accompanying this note, the computation of prejudgment interest from the respective dates each loss was incurred would impose an onerous burden on the trial courts. Therefore, the Supreme Court of Texas, recognizing that any accrual method is in this sense arbitrary, attempted to reach a compromise solution and adopted the rule that prejudgment interest is to begin to accrue from a date six months after the cause of action arose. That court was, however, not

confronted with a statute, like *W.Va.Code,* 56–6–31 [1981], which specifies when the prejudgment interest is to commence. Our statute specifies the date on which the cause of action accrued as the date for commencement of prejudgment interest.

We note, too, that the Supreme Court of South Dakota has held, without elaboration, that prejudgment interest runs from the date that each of the ascertainable losses is incurred. *In re Certification of Question from United States District Court,* 369 N.W.2d 658, 661–62 (S.D.1985). Our statute, unlike the South Dakota statute, provides for prejudgment interest on special or liquidated damages to run from the date on which the cause of action accrued.

**350**

other expenses need only to have been incurred prior to trial.

Authorities elsewhere reach the same conclusion. "We hold that employee's [unpaid but incurred] medicals and related expenditures were reasonably ascertainable upon their due date and employee is therefore entitled to prejudgment interest[.]" *Johnson v. Skelly Oil Co.*, 359 N.W.2d 130, 133 (S.D.1984). As indicated in note 4, *supra*, prejudgment interest is to be recovered as an element of compensatory damages where there is an ascertainable pecuniary loss. This theory of recovery is, thus, essentially that of restitution. In *State v. Goodrich*, 47 Wash.App. 114, 733 P.2d 1000 (1987), the court held that restitution was proper even without proof of payment of incurred expenses:

> Proof of payment is unnecessary before restitution is ordered, but the [injured person] must have an obligation to pay for the medical treatment necessitated by [his or] her injury. If there is sufficient evidence to demonstrate that the [injured person] is obligated to pay for the medical services which will be performed, and there is adequate proof of the amount of the obligation, an award of restitution for the medical services is proper.

*Id.* at 117, 733 P.2d at 1001–02.

One significant problem with requiring the plaintiff to pay the medical or similar expenses incurred before trial in order for the plaintiff to be entitled to prejudgment interest thereon is that the collateral source rule could thereby be implicated.[8] For example, the medical bills may have been paid in whole or in part by the plaintiff's health insurer or by a public assistance agency (either of which would thereby have subrogation rights). In such a situation the court in *Quinones v. Passaic Boys Club*, 183 N.J.Super. 531, 444 A.2d 630

(Law Div.1982), *overruled on another point, Dall'ava v. H.W. Porter Co.*, 199 N.J.Super. 127, 130–31, 488 A.2d 1036, 1037–38 (App.Div.1985), held:

> It is axiomatic that a party who becomes obligated to pay damages because of a wrong done may not benefit by payments or medical services rendered to the injured party from collateral sources.

> Likewise, a tortfeasor obligated to pay damages in the form of prejudgment interest under [the New Jersey court rule on prejudgment interest] should not be permitted to take advantage of benefits his victim may have received from outside sources.

183 N.J.Super. at 535, 444 A.2d at 632–33 (citation omitted). That court consequently concluded that prejudgment interest was to be recovered on "hospital and medical expenses, whether such expenses have been paid by a public assistance agency, an insurance carrier, an employer—or whether they have not been paid at all." *Id.* at 534, 444 A.2d at 632. This Court also has recognized this point: "Injured plaintiffs should not have to forego the collateral source rule merely to recover prejudgment interest." Syl. pt. 13, *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983).

■ Accordingly, we hold that under *W.Va.Code*, 56-6-31, as amended, prejudgment interest is to be recovered on special or liquidated damages incurred by the time of the trial, whether or not the injured party has by then paid for the same. If there is sufficient evidence to demonstrate that the injured party is obligated to pay for medical or other expenses incurred by the time of the trial, and if the amount of such expenses is certain or reasonably ascertainable, prejudgment interest on those

---

8. This Court has stated the following about the collateral source rule in syllabus points 7 and 8 of *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981):

   7. The collateral source rule normally operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party.

8. The collateral source rule also ordinarily prohibits inquiry as to whether the plaintiff has received payments from collateral sources. This is based upon the theory that the jury may well reduce the damages based on the amounts that the plaintiff has been shown to have received from collateral sources.

expenses is to be recovered from the date the cause of action accrued.[9]

## III.

The appellants contend that they are entitled to a new trial on the issue of damages because liability was conclusively proven but the damages awarded are clearly inadequate.[10] We do not believe the damages awarded are clearly inadequate.

■ This Court, in syllabus point 1 of *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), held that "[i]n an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." *Accord*, syl. pt. 6, *Dowey v. Bonnell*, 181 W.Va. 101, 380 S.E.2d 453 (1989); syl. pt. 1, *Maynard v. Napier*, 180 W.Va. 591, 378 S.E.2d 456 (1989). Upon a view of the evidence in this manner, the first step taken to determine whether a damage award is clearly inadequate is set forth in syllabus point 3 of *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983):

'Where a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. [*See* syl. pt. 2,] *Hall v. Groves*, 151 W.Va. 449, 153 S.E.2d 165

(1967).' *King v. Bittinger*, 160 W.Va. 129, [136,] 231 S.E.2d 239, 243 (1976). *Accord*, syl. pt. 2, *Maynard v. Napier*, 180 W.Va. 591, 378 S.E.2d 456 (1989); syl. pt. 1, *Delong v. Kermit Lumber & Pressure Treating Co.*, 175 W.Va. 243, 332 S.E.2d 256 (1985).

■ In the present case the jury awarded the full, uncontroverted amount of the medical bills, without interest, specifically, $11,091.42. The jury also awarded $6,000 for general damages, consisting of $3,000 for past pain and suffering and $3,000 for scarring. We believe that this $6,000 award for general damages for this particular injury, while by no means generous, does constitute a "substantial amount," in light of the evidence indicating minimal pain and suffering and no permanently disabling injury.

Of some assistance in this regard are comparative verdicts in other cases. In *Reager v. Anderson*, 179 W.Va. 691, 698, 371 S.E.2d 619, 626 (1988), this Court, in a case involving a claim that the damages awarded were clearly excessive, recognized that comparing verdicts in other personal injury or wrongful death cases does not provide exact guidance but does illustrate the relative size of the verdict in question. For example, in *Bauman v. Crawford*, 104 Wash.2d 241, 704 P.2d 1181 (1985) (en banc), a fourteen-year-old bicyclist collided with a motorist and sustained a broken lower leg (tibia and fibula). The injury

**9.** Our holding on this point based upon *W.Va. Code*, 56–6–31 [1981] is consistent with *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981), decided prior to the enactment of that statute, wherein we concluded that prejudgment "interest is recoverable from the date the expense was *incurred* up to the date of the trial." *Id.* 166 W.Va. at 600, 276 S.E.2d at 549 (emphasis added). (But see section II.B. of this opinion, above, for a discussion of the calculation of prejudgment interest, under the statute, from the date the cause of action accrued, not from the date each element of special or liquidated damages is incurred.) While *Bond*, in discussing the rationale for allowing prejudgment interest on pecuniary losses in tort actions, referred to compensating for "the loss of the use of funds that have been expended[,]" *id.* 166 W.Va. at 597, 598, 276 S.E.2d at 547, 548, those statements were merely a condensed version of the concept that funds for expenses incurred by

the time of the trial will ordinarily have been expended by that time by (or on behalf of) the injured party. Such statements do not in essence penalize an uninsured injured party who cannot afford to pay the incurred expenses before trial and *who normally will pay interest upon the delinquent payment of such expenses.*

**10.** This situation is characterized as a "Type 4" inadequate damage case in *Freshwater v. Booth*, 160 W.Va. 156, 164, 233 S.E.2d 312, 317 (1977). *Cf. Martin v. Charleston Area Medical Ctr.*, 181 W.Va. 308, 382 S.E.2d 502 (1989) (new trial on liability and damages awarded; "Type 2" case, which involves clearly inadequate but not nominal damages, assuming defendant is liable, but evidence on liability would sustain a verdict for either party, so new trial on both liability and damages is awarded, for appellate court cannot determine whether jury was confused as to liability or damages or both).

required three surgeries. Overall, the injured person was hospitalized ten days, had a cast for about two months and required crutches to ambulate for several weeks after cast removal. The jury returned a verdict including an award of general damages in the amount of $3,200. The Supreme Court of the State of Washington held that this award was not clearly inadequate, considering the fact that the plaintiff had fully recovered from his injury. This Washington case is remarkably similar to the case now before us.

Other similar cases include *Faulk v. Schafer*, 288 So.2d 570 (Fla.Dist.Ct.App. 1974), in which the appellate court held that an award of $1,000 for general damages was not clearly inadequate for a minor who had fractured bones in both of his legs in a collision between a bicycle upon which he was riding and a motor vehicle. The plaintiff had completely recovered, with no permanent injury. In another case, *Krueger v. Nordstrom*, 367 N.W.2d 671 (Minn.Ct. App.1985), *review denied* (Minn. July 26, 1985), the appellate court upheld a jury award of $5,000 in general damages to a fourteen-year-old pedestrian who had been struck by a motorist, thereby sustaining a badly fractured leg (comminuted fracture) and a broken tooth. The injured person's leg was in a cast for about nine months, and scars were left on the leg from steel pins which had been utilized. The appellate court stressed that the injuries were not permanently disabling. Finally, *Lee v. Chastang*, 79 Ill.App.3d 622, 35 Ill.Dec. 300, 398 N.E.2d 1250 (1979), involved a seven-year-old pedestrian who was struck by a car, resulting in a broken leg. She was in traction for two weeks, confined to a body cast for five weeks and used crutches for four weeks. There was contradictory evidence as to the existence, significance and origin of various allegedly permanent injuries (principally, a shortening of the leg). The appellate court held that the jury's award of $7,700 in general damages was not clearly inadequate and observed that the fact that the jury was less

than generous does not necessarily mean that its award is legally inadequate.

In contrast, a jury award of $10,000 for general damages was held to be clearly inadequate in *Stiso v. Piccarello*, 120 A.D.2d 516, 501 N.Y.S.2d 715 (1986), in which a six-year-old automobile passenger had sustained a fracture of her right femur (thigh bone). The injured person was confined to the hospital for one month after the accident and was immobilized in bed with her right leg in traction. She remained in a body cast for about three months, and scar tissue left a large bump on her leg. The appellate court, considering the totality of the injuries and the long period of disability accompanied by pain and suffering, concluded that any award of less than $75,000 in general damages would be inadequate as a matter of law. This amount is near the upper end of the spectrum for a broken leg without a permanently disabling injury, and the opinion does not mention deference to the jury's discretion. *See generally* annotation, *Excessiveness or Adequacy of Damages Awarded for Injuries to Legs and Feet*, 13 A.L.R. 4th 212 (1982 and Supp.1988), especially § 21 on fracture of one leg; 22 Am. Jur.2d *Damages* § 347 (1988).

The $6,000 general-damage award here is on the low end of a reasonable range, but it is not so low as to justify interference with the jury's broad discretion with respect to the amount of general damages.

## IV.

The appellants contend that they should be entitled to recover reasonable attorney's fees from the appellee's insurer for its alleged failure to negotiate a settlement in good faith. This Court disagrees.

Initially we note that the trial court, in denying the appellants' motion for a new trial or for recovery of reasonable attorney's fees, found that the appellee's insurer, Nationwide, had attempted to negotiate a settlement in good faith. This finding is not clearly erroneous. Based upon Nationwide's investigation, liability of the appellee was legitimately contested.[11]

---

11. We also note that, under *W.Va.R.Civ.P.* 68(c), the offeree must pay the costs incurred after the

In addition, the appellants have not cited, and our research has not disclosed, any reported cases holding a defendant's liability insurer responsible in a personal injury or wrongful death case for the plaintiff's reasonable attorney's fees, based upon such insurer's failure to negotiate in good faith a settlement with the plaintiff in the personal injury or wrongful death case. The cases of *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986), and *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), involved actions for, *inter alia*, reasonable attorney's fees, but those actions involved claims by an insured against the insured's own insurer for breach of contract. Here, Nationwide properly was not a party to the personal injury action by the appellants against Nationwide's insured, the appellee.

In fact, a direct action against the defendant's insurer may not be maintained until after the underlying civil action against the insured is concluded. In syllabus point 2 of *Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981), this Court held: "An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W.Va.Code, 33–11–4(9); but such implied private cause of action cannot [properly] be maintained until the underlying suit is resolved." Thus, the duty owed by the defendant's insurer to the plaintiff in the personal injury or wrongful death case arises by virtue of the separately enforceable statutory duties provided by *W.Va.Code*, 33–11–4(9) [1985], including, in paragraph (f), the duty of "attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.]"

Similar to our holding in syllabus point 2 of *Jenkins*, we hold that a prevailing plaintiff in a personal injury or wrongful death action is not entitled to recover in that action his or her reasonable attorney's fees from the defendant's liability insurer for its alleged failure to negotiate a settlement in good faith. Accordingly, the appellants' claim for recovery, in this litigation, of reasonable attorney's fees from the appellee's insurer is without merit.

V.

For the reasons set forth in section II. (subsections A. through C.) of this opinion, the portion of the final order of the trial court with respect to prejudgment interest is reversed, and this case is remanded for the trial court, consistent with this opinion, to calculate and add prejudgment interest to the special damages awarded. On the other hand, for the reasons stated in sections III. and IV. of this opinion, the portions of the trial court's final order concerning allegedly inadequate general damages and nonrecovery of reasonable attorney's fees from Nationwide in this action are affirmed.

Affirmed in part;

Reversed in part and

Remanded with directions.

offeror makes an offer of judgment pursuant to *W.Va.R.Civ.P.* 68(a)–(b), if the judgment finally obtained by the offeree is not more favorable than such an offer. For example, if the appellee, through her insurer, Nationwide, had timely paid into court her last offer of $20,000 pursuant to Rule 68(b), the appellants would have been responsible for the appellee's costs incurred after such offer of judgment because the jury awarded damages totalling $17,091.42.