IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-0890

_____

FILED
June 15, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TESSA ANN JORDAN and LYNN JORDAN,
Defendants Below, Petitioners

v.

JOSEPH M. JENKINS and STEPHANIE D. JENKINS,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Harrison County
The Honorable Christopher J. McCarthy, Judge
Civil Action No. 18-C-65-1

REVERSED AND REMANDED

_____

AND

_____

No. 19-0899

_____

SAFECO INSURANCE COMPANY of AMERICA and
LIBERTY MUTUAL INSURANCE COMPANY,
Defendants Below, Petitioners

v.

JOSEPH M. JENKINS and STEPHANIE D. JENKINS,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Harrison County
The Honorable Christopher J. McCarthy, Judge
Civil Action No. 18-C-65-1

AFFIRMED, IN PART, REVERSED, IN PART,
and REMANDED

_____


Submitted: March 23, 2021
Filed:  June 15, 2021

Ancil G. Ramey. Esq.
Hannah C. Ramey, Esq.
Steptoe & Johnson, PLLC
Huntington, West Virginia

David P. Cook Jr., Esq.
MacCorkle Lavender PLLC
Charleston, West Virginia
Counsel for Petitioners
Tessa Ann Jordan &
Lynn Jordan

David J. Romano, Esq.
Romano Law Office, LC
Clarksburg, West Virginia
Counsel for Respondents
Joseph M. Jenkins &
Stephanie D. Jenkins

William M. Harter, Esq.
Frost Brown Todd, LLC
Columbus, Ohio
Carte P. Goodwin, Esq.
Elise N. McQuain, Esq.
Frost Brown Todd, LLC
Charleston, West Virginia
Counsel for Petitioners
Safeco Insurance Company
of America & Liberty Mutual
Insurance Company

JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE WALKER concurs as to No. 19-0899, and dissents as to No. 19-0890, and reserves the right to file a separate opinion.
JUSTICE WOOTON dissents to Nos. 19-0890 and 19-0899, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976).

2.      "The appellate standard of review for an order granting or denying a renewed motion for judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure [1998] is *de novo.*" Syl. Pt. 1, *Fredeking v. Tyler*, 224 W.Va. 1, 680 S.E.2d 16 (2009).

3.      "When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the West Virginia Rules of Civil Procedure [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party." Syl. Pt. 2, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 17 (2009).

4.     "When reviewing an award of punitive damages in accordance with Syllabus point 5 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), and Syllabus point 5 of *Alkire v. First National Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996), this Court will review *de novo* the jury's award of punitive damages and the circuit court's ruling approving, rejecting, or reducing such award." Syl. Pt. 16, *Peters v. Rivers Edge Mining, Inc.,* 224 W.Va. 160, 680 S.E.2d 91 (2009), superseded by statute on other grounds as stated in *Martinez v. Asplundh Tree Expert Co.,* 239 W. Va. 612, 803 S.E.2d 582 (2017).

5.     "When personal property is injured the owner may recover the cost of repairing it, plus his expenses stemming from the injury, including loss of use during the repair period. If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover its lost value, plus his expenses stemming from the injury, including loss of use during the time he has been deprived of his property." Syl. Pt. 1, *Checker Leasing, Inc. v. Sorbello*, 181 W. Va. 199, 382 S.E.2d 36 (1989).

6.     Where a motor vehicle owner seeks to recover for the loss of use of his or her destroyed vehicle, the owner may not recover such damages for a period longer than that reasonably needed to replace it, which shall be determined by the trier of fact under the facts and circumstances presented.

7. "Where evidence of insurance is wrongfully injected at a trial, its prejudicial effect will be determined by applying the standard set out in Rule 103(a) of the West Virginia Rules of Evidence. In addition to the possibility that the jurors are already aware of the existence of insurance, the trial court should consider the relative strength of each of the parties['] case or the lack of it, whether the jury was urged by counsel or the witness to consider insurance in deciding the issue of negligence or damages, whether the injection of insurance was designed to prejudice the jury, whether the mention of insurance was in disregard of a previous order, and whether a curative instruction can effectively dissipate any resulting prejudice." Syl. Pt. 3, *Reed v. Wimmer*, 195 W. Va. 208, 465 S.E.2d 208 (1995).

8. "The West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts." Syl. Pt. 7, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

9. "Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant." Syl. Pt. 4, *Gable v. Kroger Co.*, 186 W. Va. 62, 410 S.E.2d 701 (1991).

10. "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4,

*State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 3, *Roof Service of Bridgeport, Inc. v. Trent*, -- W. Va. --, 854 S.E.2d 302 (2020).

11.     "'It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed.' Syl. Pt. 2, *Skeen v. C and G Corp.*, 155 W. Va. 547, 185 S.E.2d 493 (1971)." Syl. Pt. 5, *Grimmett v. Smith*, 238 W. Va. 54, 792 S.E.2d 65 (2016).

12.     Pursuant to West Virginia Code § 55-7-29(a) [2015], an award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

13.     "Under our system for an award and review of punitive damages awards, there must be: (1) a reasonable constraint on jury discretion; (2) a meaningful and adequate review by the trial court using well-established principles; and (3) a meaningful and adequate appellate review, which may occur when an application is made for an appeal." Syl. Pt. 2, *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991).

14. "When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:

> (1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.
>
> (2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.
>
> (3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.
>
> (4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.
>
> (5) The financial position of the defendant is relevant."

Syl. Pt. 3, *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991).

15. "Under our punitive damage jurisprudence, it is imperative that the amount of the punitive damage award be reviewed in the first instance by the trial court by applying the model specified in Syllabus Points 3 and 4 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), and Syllabus Point 15 of *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Thereafter, and upon petition, this Court will review the amount of the punitive damage award, applying the standard specified in Syllabus Point 5 of *Garnes.*" Syl. Pt. 5, *Alkire v. First National Bank of Parsons*, 197 W. Va. 122, 475 S.E.2d 122 (1996).

16. "When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:

> (1) The costs of the litigation;
>
> (2) Any criminal sanctions imposed on the defendant for his conduct;
>
> (3) Any other civil actions against the same defendant, based on the same conduct; and
>
> (4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.
>
> Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through

remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the sound discretion of the trial court, any of the above factors may also be presented to the jury."

Syl. Pt. 4, *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991).

17.     "The outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1. However, when the defendant has acted with actual evil intention, much higher ratios are not per se unconstitutional." Syl. Pt. 15, *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443 (1993).

18. When a punitive damages award falls within the limitations set forth in West Virginia Code § 55-7-29(c) [2015], the trial court, in the first instance, must apply the model specified in Syllabus Points 3 and 4 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), and Syllabus Point 15 of *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443 (1993).

**HUTCHISON, Justice**:

Before this Court are two appeals arising from adverse jury verdicts rendered in separate trials conducted in the Circuit Court of Harrison County following an automobile accident involving Respondent Joseph Jenkins and Petitioner Tessa Jordan. The first trial concerned the calculation of damages sustained by Mr. Jenkins and his wife, Stephanie Jenkins, as a result of the accident, which the parties stipulated was caused entirely through the fault of Ms. Jordan. Ms. Jordan and her father, Petitioner Lynn Jordan, raise various trial errors in their appeal of the jury's calculation of damages (Appeal No. 19-0890).

Respondents Mr. and Mrs. Jenkins also sued the Jordans' insurance carrier, Safeco Insurance Company of America and Liberty Mutual Insurance Company (collectively "Safeco"), for, inter alia, the tort of conversion, and a second, bifurcated trial was conducted on respondents' claims for compensatory and punitive damages. Safeco appeals the jury's conclusion that respondents are entitled to punitive damages in the amount of $60,000 for converting Mr. Jenkins's totaled vehicle for which he was awarded $1,000 in compensatory damages (Appeal No. 19-0899).

Upon our careful review of the appendix record in both appeals, the applicable law, and the arguments of all parties, and for the reasons set forth below, we reverse the circuit court's order denying the Jordans' motion to set aside the verdict and for a new trial in Appeal No. 19-0890, and remand that case for a new trial.

1

In Appeal No. 19-0899, we affirm the circuit court's order denying Safeco's motion for judgment notwithstanding the verdict and for a new trial but reverse the court's order denying Safeco's motion to reduce the punitive damages award and remand to the circuit court, with directions.

## I. Factual and Procedural Background

On October 15, 2017, Mr. Jenkins and Ms. Jordan were involved in an automobile collision in Weston, West Virginia, when Ms. Jordan ran a red light and hit Mr. Jenkins's vehicle head on. While Mr. Jenkins was transported to a hospital by ambulance, his vehicle, a 2009 Chevrolet Aveo, was towed from the accident scene to J.E. Hitt Garage and Body Shop ("Hitt's Garage" or "Hitt's") located in Weston.

Because Mr. Jenkins believed that Ms. Jordan was at fault for the accident given that she had been cited at the scene by law enforcement for failing to stop at a red signal, he twice called her insurance carrier, Safeco[1] on October 17, 2017, for the purpose of obtaining a rental vehicle at Safeco's expense. As a heavy equipment operator, Mr. Jenkins travels extensively by car for his work and was in need of transportation. Safeco advised Mr. Jenkins that it would not pay for a rental vehicle until liability was determined

---

[1] In their complaint, Mr. and Mrs. Jenkins alleged, upon information and belief, that Liberty Mutual Insurance Company "is the owner and controls the operations of Defendant Safeco." In their Answer, Safeco and Liberty Mutual denied this particular allegation. Nonetheless, it is clear that these parties are affiliated though the exact nature of the affiliation is not readily apparent from the record and is not relevant to this appeal.

2

but that Mr. Jenkins could contact his own insurance carrier or pay out-of-pocket for a rental and then be reimbursed if Ms. Jordan's liability was established. According to Safeco's records, Mr. Jenkins "advised that he might get an attorney involved due to the way the claim is handled [sic]." Unbeknownst to Mr. Jenkins, on October 19, 2017, Safeco determined that its insured, Ms. Jordan, was at fault for the collision.[2]

With financial assistance from his father, Mr. Jenkins rented a vehicle from October 17, 2017, through November 2, 2017, for a total of seventeen days, at a rate of $62.47 per day, and paid the total amount of $1,061.99. Mr. Jenkins purchased a replacement vehicle in December of 2017.

Meanwhile, Mr. Jenkins's wrecked vehicle remained at Hitt's Garage. It is undisputed that the vehicle was not to be moved from Hitt's until it was released by Mr. Jenkins or his agent.

---

[2] Mr. Jenkins testified that, during his conversation with the Safeco representative on October 17, 2017, he advised that he intended to obtain legal counsel and identified his trial counsel by name. Mr. Jenkins contacted counsel on or before October 19, 2017, but it is unclear exactly when counsel was officially engaged for purposes of representing Mr. Jenkins and communicating with Safeco on Mr. Jenkins's behalf. Safeco representative, Aaron Ford, testified that it is Safeco's policy to communicate directly with counsel once a claimant indicates that counsel has been retained. Thus, Safeco representatives attempted to contact Mr. Jenkins's counsel on October 19, October 23, and October 26, 2017, although Safeco representatives mistakenly attempted to contact the office of another attorney who shares the attorney's last name. Ultimately, in December of 2017, Safeco and Mr. Jenkins's counsel engaged in a series of communications for the purpose of verifying the location of Mr. Jenkins's vehicle and scheduling an inspection.

Mr. Jenkins's vehicle was finally inspected at Hitt's Garage on January 3, 2018, by James B. Conrad of Conrad Claim Service LLC, and an estimate and report was ultimately sent to Safeco. The vehicle was determined to be a total loss. Mr. Conrad subsequently forwarded photos of the vehicle and his report to Mr. Jenkins's counsel. Thereafter, by letter dated January 15, 2018, approximately three months after the accident, Safeco advised Mr. Jenkins as follows:

> We understand at this time that you have not yet decided whether you intend to retain the salvage of your [vehicle].
>
> If you decide to keep the vehicle:[3]
>
> - Please contact us before January 18, 2018.
> - To go over the next steps.
>
> If you decide you do not want to keep the vehicle:
>
> - I have set up a tow for our Copart Salvage yard to pick up the vehicle, you will need to release the vehicle with Hitt's Garage for Safeco Insurance to pick up. Please remove your personal belongs [sic] out of the vehicle.
>
>         . . . .
>
> In order for us to process your claim as quickly as possible, we ask that you return your properly signed paperwork [i.e., the vehicle's title and a Power of Attorney] by January 19, 2018.
>
> If your vehicle is currently accruing storage costs at an auto repair facility or tow yard, please be advised that our obligation to pay for storage costs will end as of January 18, 2018. Any costs incurred after this date will be your responsibility.

---

[3] Mr. Jenkins testified that he intended to keep and fix up the vehicle.

4

(Footnote added and emphasis in original).[4]

Mr. Jenkins never released the vehicle. Although Safeco's correspondence to Mr. Jenkins was received on January 17, 2018, Mr. Jenkins was out of town for work, and he did not open the letter until January 22, 2018. By that time, and despite Safeco's assurance in the letter that no action with regard to the vehicle would be taken without Mr. Jenkins's input, the vehicle had already been moved from Hitt's. On January 16, 2018, Safeco had made an assignment to Copart, Inc. ("Copart") to store Mr. Jenkins's totaled vehicle for eventual sale for salvage. According to Safeco, when the assignment was made, a Safeco claims adjuster advised Copart that she was "unsure" if Mr. Jenkins had released the vehicle. On January 17, 2018, an employee from Hitt's Garage advised a Copart employee that the vehicle had been released, and the following day, a Copart vendor, Scrap and Transport Company, transported the vehicle from Hitt's to Copart's lot in Hurricane, West Virginia.[5] By correspondence dated January 25, 2019, Safeco advised Mr. Jenkins that the vehicle had been moved to the Copart lot where it remained up until and including the time of trial.

---

[4] The letter was signed by Safeco claims adjuster Rhonda Rutledge, a named defendant below.

[5] The evidence at trial was conflicting as to who released the vehicle to Scrap and Transport Company. A Hitt's Garage representative, Russ Edwards, testified that it was a Safeco representative who advised him that the vehicle had been released. According to Copart and Safeco business records, however, it was Mr. Edwards who released the vehicle. The business records also falsely represent that Mr. Jenkins was Safeco's insured and that Safeco was the "seller" of Mr. Jenkins's vehicle

In a complaint filed on March 13, 2018, respondents alleged, as against Ms. Jordan, negligence/gross negligence in the manner in which she caused her vehicle to strike Mr. Jenkins's vehicle head on, causing him to suffer bodily injury and property damage to his vehicle. As against Ms. Jordan's father, Lynn Jordan, the Jenkinses alleged that he was vicariously liable for the acts of Ms. Jordan under the family purpose doctrine. Mrs. Jenkins alleged a claim for loss of consortium. Respondents and the Jordans eventually entered into a stipulation that, "as a matter of law, 100% of the fault for the automobile collision" was that of Ms. Jordan. This stipulation was adopted by the circuit court.

Respondents also alleged that the Jordans' insurer, Safeco, and two of its employees, claims adjusters Sara Abell and Rhonda Rutledge[6] trespassed and converted Mr. Jenkins's vehicle without his consent or permission and "mov[ed] it to an unknown location maintaining control and dominion over his property that they knew did not belong to them."[7] Respondents alleged that Safeco's conduct constituted negligence, gross negligence, trespass, conversion, theft, the tort of outrage, and a civil conspiracy. Respondents sought punitive damages from all named defendants.

---

[6] Ms. Abell and Ms. Rutledge were subsequently dismissed as party defendants.

[7] Although Mr. Conrad d/b/a Conrad Claim Service LLC was also named as a defendant, he was subsequently dismissed from this action.

Prior to trial, Safeco filed a motion "for a separate trial from that against the Jordans" and "to bifurcate compensatory and punitive damages claims within the separate trial." Similarly, the Jordans filed a motion to bifurcate, upon, inter alia, the ground that they would be prejudiced by the injection of "issues of insurance coverage . . . into the underlying case." The Jordans argued that West Virginia Rule of Evidence 411 prohibits the admission of evidence that a person was insured against liability to prove whether the person acted negligently or otherwise wrongfully; that none of the exceptions to the inadmissibility of evidence of insurance under Rule 411 exist in this case; and that "the underlying case is for acts/allegations not remotely related to the insurance company [d]efendants' alleged failure to properly handle or adjust Mr. Jenkins's property damage claim." The circuit court granted the motions to bifurcate.

The first trial, a one-day jury trial on respondents' claims against the Jordans, was conducted on April 2, 2019. Because Ms. Jordan's liability for the accident had been stipulated by the parties, the trial was limited to the calculation of respondents' damages. As against the Jordans, the jury returned a total damages award of $56,928.98 that included Mr. Jenkins's medical expenses ($2,970),[8] Mr. Jenkins's lost wages ($600), the loss of use

---

[8] We observe that, although the jury awarded Mr. Jenkins his medical expenses as damages, there was no corresponding demand for damages for Mr. Jenkins's pain and suffering. That is, the jury was not instructed on this element of damages nor was there a specific line item for pain and suffering on the jury verdict form.

of Mr. Jenkins's vehicle ($33,358.98), aggravation and inconvenience[9] ($12,000), and Mrs. Jenkins's loss of consortium ($8,000).[10] The Jordans filed a motion to set aside the verdict and for a new trial based upon various trial errors, which the circuit court denied by order entered on September 3, 2019.

The second, bifurcated trial as against Safeco was conducted on April 10 and 11, 2019. Respondents' theory was that Safeco moved Mr. Jenkins's vehicle, without his consent or permission, from Hitt's Garage in order to reduce Safeco's costs related to storing it there and to put pressure on Mr. Jenkins to accept its initial offer of payment for the loss of his vehicle. During the compensatory phase of the bifurcated trial, respondents, over Safeco's objection, introduced evidence that, after Mr. Jenkins's vehicle was moved, Safeco made an initial offer to Mr. Jenkins of $2,426.54 for his totaled vehicle; that Mr. Jenkins countered Safeco's offer, requesting $3,500 as fair value; that Safeco rejected Mr. Jenkins's counter-offer, declaring in an e-mail that the initial offer was "not negotiable"; and that, after Safeco was served with a copy of the complaint in this case, it increased its settlement offer to Mr. Jenkins to $3,500. The jury found in favor of respondents on their

_____

[9] In their briefs on appeal, the parties sometimes refer to this damages award as "annoyance and inconvenience." For consistency, we will use "aggravation and inconvenience" as used on the verdict form.

[10] Respondents did not seek damages for the destruction of Mr. Jenkins's vehicle and, therefore, did not introduce evidence as to the vehicle's fair market value. We note, however, that Mr. Jenkins testified during both trials that, in January of 2019, several weeks prior to trial, Safeco sent him a check in the amount of $3,645.52, but that the check was not accompanied by any correspondence from Safeco indicating its purpose.

8

conversion claim only[11] and awarded them $1,000 for annoyance and inconvenience. On the verdict form, the jury specifically found, "by clear and convincing evidence," that Safeco acted "with actual malice towards [respondents], or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." The second phase of the bifurcated trial – on respondents' punitive damages claim – was thereafter conducted and the jury awarded respondents punitive damages in the amount of $60,000 for Safeco's conversion of the vehicle. Safeco filed post-trial motions challenging the punitive damages award in all respects: Safeco filed a motion for judgment notwithstanding the verdict; alternatively, a motion for a new trial; and also in the alternative, a motion to reduce the punitive damages award. By orders entered on September 3, 2019, the circuit court denied Safeco's motions.

---

[11] Conversion is "'[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, . . . and it is not necessary that the wrongdoer apply the property to his own use.'" Syl. Pt. 17, in part, *Rodgers v. Rodgers*, 184 W. Va. 82, 399 S.E.2d 664 (1990) (quoting Syl. Pt. 3, in part, *Pine & Cypress Mfg. Co. v. American Eng'g & Constr. Co.*, 97 W. Va. 471, 125 S.E.2d 375 (1924)). *See also Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, -- W. Va. --, --, 854 S.E.2d 870, 885-86 (2020) ("'The tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is, in law, a conversion of the property[.]'" quoting *Arnold v. Kelly*, 4 W. Va. 642 (1871)).

The Jordans and Safeco now appeal the respective orders denying their post-trial motions. Their appeals were consolidated by this Court for purposes of oral argument, consideration, and decision. We will consider each appeal in turn.

## II. Standards of Review

These appeals implicate several standards of review. With respect to a circuit court's ruling denying a motion for a new trial, we have held: "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976). However, a new trial should not be granted "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *In re State Pub. Bldg. Asbestos Litig.*, 193 W.Va. 119, 124, 454 S.E.2d 413, 418 (1994) (internal citation omitted). In further explanation, this Court has held:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

10

As to renewed motions for judgment as a matter of law, "[t]he appellate standard of review for an order granting or denying a renewed motion for judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure [1998] is *de novo*." Syl. Pt. 1, *Fredeking v. Tyler*, 224 W.Va. 1, 680 S.E.2d 16 (2009). The Court explained as follows:

> When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the West Virginia Rules of Civil Procedure [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

224 W. Va. at 1, 680 S.E.2d at 17, syl. pt. 2. We have also held:

> In determining whether there is sufficient evidence to support a verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. Pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981 (1984). Finally, as to a ruling denying a motion to reduce a punitive damages award, we have held that:

> [w]hen reviewing an award of punitive damages in accordance with Syllabus point 5 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), and Syllabus point 5 of *Alkire v. First National Bank of Parsons,* 197 W.Va. 122,

11

475 S.E.2d 122 (1996), this Court will review *de novo* the jury's award of punitive damages and the circuit court's ruling approving, rejecting, or reducing such award.

Syl. Pt. 16, *Peters v. Rivers Edge Mining, Inc.,* 224 W.Va. 160, 680 S.E.2d 91 (2009), superseded by statute on other grounds as stated in *Martinez v. Asplundh Tree Expert Co.,* 239 W. Va. 612, 803 S.E.2d 582 (2017). With these standards guiding our review, we proceed to address the assignments of error raised in these appeals.

## III. Discussion

### *The Jordans' appeal – Appeal No. 19-0890*

In their appeal of the jury verdict following the trial on damages, the Jordans raise four assignments of error: that the circuit court erred (1) by permitting respondents to subpoena a corporate representative from Safeco to testify at trial, which was supposed to be limited to the calculation of damages only; (2) by allowing respondents to recover duplicative damages for both loss of use and aggravation and inconvenience; (3) by denying the Jordans' request for a mitigation of damages instruction relative to respondents' loss-of-use claim; and (4) by permitting respondents to introduce an exhibit that calculated the value of their alleged loss-of-use claim without any evidentiary predicate.

### *Loss-of-use damages*

We first address the Jordans' assignment of error that the circuit court erred by denying their request for a mitigation of damages instruction relative to Mr. Jenkins's loss-of-use claim. It is undisputed that, following the accident, Mr. Jenkins rented a temporary replacement vehicle for seventeen days at a rate of $62.47 per day, for a total amount of $1,061.99, and that he purchased a permanent replacement vehicle several weeks later, in December of 2017. However, based upon evidence that Mr. Jenkins's damaged vehicle – which was determined to be a total loss – had never been returned to him, the jury awarded respondents $33,359.98 for the loss of use of the vehicle, an amount calculated by multiplying the daily rate Mr. Jenkins paid for the rental vehicle ($62.47) by 534 days, which is the number of days from the date of the accident, October 15, 2017, to the date of trial, April 2, 2019.[12] On appeal, the Jordans contend that the jury should have been instructed that Mr. Jenkins had a duty to mitigate the loss of use of his vehicle and that the circuit court's refusal to give their proposed instruction[13] foreclosed them from

---

[12] This calculation was specifically set forth in an exhibit prepared by respondents' counsel, published to the jury (over the Jordans' objection) during the testimony of Safeco's corporate representative, admitted into evidence, and adopted by the jury in its loss-of-use damages award. The propriety of that exhibit is the subject of the Jordan's fourth assignment of error, which we need not address in light of our conclusion that the amount of damages awarded for the loss of use of Mr. Jenkins's vehicle must be reversed. *See* discussion *infra*.

[13] The Jordans argued that Mr. Jenkins had a duty to mitigate and that "loss of use is looked at from a reasonable person standard." They proposed the following jury instruction, which the circuit court rejected:

Continued . . .

13

arguing that Mr. Jenkins, in fact, mitigated his damages when he purchased a permanent replacement vehicle thereby entitling him to a loss-of-use damage award equal only to what he paid to rent a vehicle for seventeen days prior to such purchase. The Jordans further contend that, considering that Mr. Jenkins's vehicle was valued at $3,500, a loss-of-use award exceeding $33,000 was manifestly unreasonable.

Respondents counter that the mitigation instruction proposed by the Jordans was an incorrect statement of the law and not relevant to the facts in this case because it failed to provide the jury with any guidance as to what it should "consider in determining the amount of damages incurred for [r]espondents being deprived of thei[ir] work vehicle for over 500 days." They argue that the jury knew that Mr. Jenkins had "obtain[ed] a replacement vehicle and other facts necessary for [it] to consider and arrive at [its] verdict." According to respondents, the jury was properly instructed on loss of use and that an instruction was given (without objection) that "included informing [it] that Joe Jenkins'[s]

---

The Court instructs the jury that the law requires a party to use ordinary care and to make reasonable efforts and reasonable expense to lessen the damages he or she would otherwise sustain as a result of another's breach of contract/negligence. In other words, an injured party is responsible for doing only those things which can be accomplished at a reasonable expense and by reasonable efforts.

14

loss of use damages and aggravation and inconvenience damages[14] could be reduced based

on the facts as determined by the jury based on all the evidence." (Footnote added).

_____

[14] The Jordan's second assignment of error asserts that the circuit court erred by allowing respondents to recover damages both for loss of use and aggravation and inconvenience. They argue on appeal that these damages were duplicative and that the award for aggravation and inconvenience should have been set aside "on post-trial motions," as this Court did in *Hardman Trucking, Inc. v. Poling Trucking Co., Inc.*, 176 W. Va. 575, 346 S.E.2d 551 (1986). First, the Jordans' reliance on *Hardman Trucking* is misplaced if not misleading. In that case, the trial court set aside the $2,000 verdict for "inconvenience and annoyance" because it found "that the [plaintiff] presented no evidence of being inconvenienced." *Id.* at 581, 346 S.E.2d at 556. For that reason, we declined to address "the legal question of whether a corporation can recover such damages." *Id.*

Second, despite the Jordans' representations to the contrary, their post-trial motions did not assert that the damages awards for loss of use and aggravation and inconvenience were duplicative and did not seek to have the latter set aside. Furthermore, the Jordans point to no portion of the record establishing that they otherwise preserved this alleged error for appellate review. Rather, the Jordans reference a motion for directed verdict, in which they argued, "Plaintiff obtained a new vehicle in December of 2017. To me, that caps the loss-of-use damages in the case. . . . And the fact of the matter is there was no loss of use after he got that vehicle. There was no loss of use after the rental vehicle was released." We do not construe this motion as an argument against permitting awards for both loss of use and aggravation and inconvenience damages. Nor do we believe that it was intended as such because the Jordans did not object to either the instruction advising the jury that respondents "are entitled to damages for aggravation and inconvenience caused or contributed by [the Jordans]," or the verdict form, which included separate line items (i.e., a breakdown) for loss of use and aggravation and inconvenience damages. Moreover, during closing argument, the Jordans' counsel attempted to minimize that element of damages relative to respondents, stating, "When it comes to the annoyance [sic] and inconvenience claim, it was minor. I mean, I understand they were frustrated." We have instructed that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, *Maples v. W. Virginia Dep't of Com., Div. of Parks & Recreation*, 197 W. Va. 318, 475 S.E.2d 410 (1996). *See also* Syl. Pt. 1, *Estep v. Brewer,* 192 W.Va. 511, 453 S.E.2d 345 (1994) ("'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.' Syl. pt. 1, *State Road Commission v. Ferguson,* 148 W.Va. 742, 137

Continued . . .

At its core, the issue presented is to what extent Mr. Jenkins may recover for the loss of use of his destroyed vehicle. We have long recognized that

> [w]hen personal property is injured the owner may recover the cost of repairing it, plus his expenses stemming from the injury, including loss of use during the repair period. *If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover its lost value, plus his expenses stemming from the injury, including loss of use during the time he has been deprived of his property.*

Syl. Pt. 1, *Checker Leasing, Inc. v. Sorbello*, 181 W. Va. 199, 382 S.E.2d 36 (1989) (emphasis added). *See also* Syl. Pt. 1, *Ellis v. King*, 184 W. Va. 227, 400 S.E.2d 235 (1990). This rule is consistent with "the modern trend" that "the owner of personal property that has been totally destroyed may recover loss-of-use damages in addition to the fair market value of the property immediately before the injury."[15] *J & D Towing, LLC v. American Alt. Ins. Corp.,* 478 S.W.3d 649, 676 (Texas 2016). *See also Long v. McAllister*, 319 N.W.2d 256 (Iowa 1982) (collecting cases).[16]

---

S.E.2d 206 (1964)."). Accordingly, we consider this assignment of error to be waived and decline to address it.

[15] In this case, Mr. Jenkins did not seek to recover the fair market value of his vehicle.

[16] We observe that, unlike West Virginia, some jurisdictions distinguish between a damaged vehicle that is repairable and a vehicle that is beyond repair for purposes of loss of use, allowing for the recovery of such damages in the case of the former but not the latter. *See generally* Annotation, Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed 18 A.L.R. 3d 497 (1968).

16

The parties generally agree that the basic measure of damages for loss of use is the fair rental value of a replacement vehicle. *See McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 428, 475 S.E.2d 507, 520 (1996) (citing *O'Dell v. McKenzie,* 150 W.Va. 346, 145 S.E.2d 388 (1965)). Courts that have addressed to what extent the owner of a destroyed vehicle may recover loss-of-use damages have generally concluded that an owner may not recover such damages for a period longer than that reasonably needed to replace the destroyed property. In other words, the owner must mitigate the damages. We agree.

In *J & D Towing*, the Supreme Court of Texas explained that,

> [a]s with all consequential damages, the availability of loss-of-use damages is necessarily circumscribed by commonsense rules. To begin with, the damages claimed may not be "too remote." This is not to say they must be "the usual result of the wrong," but they must be foreseeable and directly traceable to the tortious act. The damages also must not be speculative. Although mathematical exactness is not required, the evidence offered must rise above the level of pure conjecture. *Moreover, the damages may not be awarded for an unreasonably long period of lost use. Whether framed as a duty of mitigation or a doctrine of avoidable consequences, the principle is the same: A plaintiff may not recover loss-of-use damages for a period longer than that reasonably needed to replace the personal property.* That principle compels a plaintiff's diligence in remedying his loss and deters an opportunistic plaintiff from dilly-dallying at the expense of the defendant. After all, the role of actual damages is to place the plaintiff in his *rightful* position, not the position he wishes to acquire.

478 S.W.3d at 677 (emphasis added and footnotes omitted).

The Supreme Court of Hawaii has instructed that, as a general matter, loss-of-use damages should be "limited to the period of time reasonably necessary to obtain a

17

replacement (if the property is completely destroyed or cannot be returned by repair to its previous condition)," and further, that "the reasonableness of the period of time that the plaintiff claims he or she was deprived of the property, including whether the plaintiff reasonably could have mitigated the damages in some manner" should be considered under "the totality of the circumstances." *Fukida v. Hon/Hawaii Service & Repair*, 33 P.3d 204, 211 (Hawaii 2001). *See also Straka Trucking, Inc. v. Estate of Peterson*, 989 P.2d 1181, 1183, 1184 (Wash. Ct. App. 1999) (stating that a claim for loss-of-use damages "is subject to normal requirements . . . on mitigation of damages" and ordering, on remand, that the plaintiff "has the burden of proving the reasonableness of the period of time for which it claims loss of use").

In *Bartlett v. Garrett*, a New Jersey case that involved a plaintiff whose parked vehicle was a total loss after it was struck by the defendant's vehicle, the court concluded that "[w]here the need for a substitute vehicle is clearly established and where such vehicle is actually procured for a reasonable time, a plaintiff is entitled to recover for out-of-pocket expenses in renting the substitute vehicle[.]" 325 A.2d 866, 867 (N.J. Super. 1974). The court in *Bartlett* found that the "plaintiff established both her [n]eed for a car during the 2 ½-week period between the date of the accident and the date on which a replacement vehicle was purchased, and the [r]easonableness of this period." *Id.* The evidence of "reasonableness" in that case included that the plaintiff was elderly and lived in a community without public transportation; that the loss occurred on December 21 and she needed transportation during the holiday season; and that she sought to purchase a used

18

economical vehicle. *See id.* Given this evidence, the court concluded that two-and-one-half weeks "was not an unreasonable amount of time for her to seek, find, finance and have delivered a replacement vehicle." *Id.* at 868.

Other jurisdictions are in accord, concluding that the owner of a destroyed vehicle may recover damages for loss of use, which is "the reasonable value of the loss of use of the property for the reasonable amount of time required to obtain a suitable replacement." *Chlopek v. Schmall*, 396 N.W.2d 103, 110 (Neb. 1986). *See also Ex parte S & M,* LLC, 120 So.3d 509, 516 (Ala. 2012) (where damaged vehicle is beyond repair, "reasonable loss-of-use damages" are recoverable "during the time reasonably required to procure a suitable replacement vehicle"); *Allanson v. Cummings*, 439 N.Y.S.2d 545, 548 (N.Y. App. Div. 1981) (plaintiff whose vehicle was totally destroyed may "recover damages for the loss of the destroyed vehicle's use which is the reasonable rental value of a substitute vehicle for a reasonable period of time until a replacement can be made"); and *Washington v. Lake City Beverage, Inc.*, 352 So.2d 717, 722 (La. App. 1977) (where wrecked vehicle is not repairable, damages for loss of use of the vehicle "are recoverable only for a reasonable time, that period in which he owner becomes aware of the situation and secures a replacement therefor").

We believe these cases to be in keeping with our "'general rule [that] a person whose property is endangered or injured must use reasonable care to mitigate the damages; but such person is only required to protect himself from the injurious consequence of the wrongful act by the exercise of ordinary effort and care and moderate expense.'" *Hardman*

19

*Trucking, Inc. v. Poling Trucking Co.*, 176 W. Va. 575, 579, 346 S.E.2d 551, 555 (1986) (quoting *Oresta v. Romano Bros., Inc.*, 137 W. Va. 633, 650, 73 S.E.2d 622, 632 (1952)). *See also id.* (stating that "a vehicle owner might lessen his damages by renting a replacement" and would then be entitled to recover "'the amount it would have cost him to replace the vehicle by renting one in its stead'" (quoting *Somerville v. Dellosa*, 133 W. Va. 435, 445-46, 56 S.E.2d 756, 763 (1949)).

We hold, therefore, that where a motor vehicle owner seeks to recover for the loss of use of his or her destroyed vehicle, the owner may not recover such damages for a period longer than that reasonably needed to replace it, which shall be determined by the trier of fact under the facts and circumstances presented.[17] Because the jury should have been instructed on Mr. Jenkins's duty to mitigate the loss of use of his vehicle, we must reverse the jury's verdict and remand this case for a new trial on respondents' claim for damages against the Jordans.

---

[17] We are aware that a vehicle owner may elect to cope with the loss of use of his or her vehicle by some means other than renting a temporary replacement vehicle and then purchasing a permanent replacement vehicle, in which case courts have recognized that it may be "more difficult to place a monetary value upon the value of the [loss of] use of the car to the [owner]." *Kim v. Amer. Family Mut. Ins. Co.*, 501 N.W.2d 24, 28 (Wisc. 1993). Nonetheless, the "[owner] is entitled to receive as damages such sum as will compensate for the loss of use of the [destroyed] vehicle." *Id. See also Hellenbrand v. Hilliard*, 687 N.W.2d 37, 47 (Wisc. Ct. App. 2004) (noting that "the owner of a damaged vehicle . . . is free to choose how to deal with loss of use and, if the owner seeks loss-of-use damages, it is up to a factfinder to determine the monetary value of the loss of use"). The question of what other action taken by an owner of a destroyed vehicle may (or may not) be a measure of loss of use and thus be recoverable is not now before us because Mr. Jenkins chose to and did rent a temporary replacement vehicle and then purchase a permanent one.

*Evidence of insurance and alleged bad faith*

Finally, we briefly address the Jordans' remaining assignment of error, in which they argue that the circuit court erred by permitting respondents to subpoena Safeco's corporate representative, Aaron Ford, to testify at their trial on damages. As noted above, the Jordans moved to bifurcate their trial from that of Safeco based upon their concern that they would be prejudiced by the injection of "issues of insurance coverage"; that Rule 411 prohibits the admission of such evidence; that none of the exceptions to the inadmissibility of evidence of insurance under Rule 411 were present in the case; and that the trial on the calculation of respondents' damages as caused by the Jordans was not related to respondents' allegations that Safeco handled the settlement of Mr. Jenkins's claim improperly. Despite granting the Jordans' motion to bifurcate, the circuit court permitted respondents to subpoena Mr. Ford to testify to "any and all facts, details and reasons regarding the [Safeco] Defendants' conduct and actions in this matter regarding [respondents'] claims" and "[a]ny and all facts or information that would explain any of [the Safeco] Defendants' actions or conduct in this claim at any time[.]"

In that we have already determined that a new trial on damages is warranted, we need not delve deeply into this issue except to say that the evidence of insurance should have been excluded under Rule 411. The rule provides:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's

21

bias or prejudice or, if controverted, proving agency, ownership, or control. This evidence may be admissible against a party that places in controversy the issues of the party's poverty, inability to pay, or financial status.

*Id.*

Our review of the appendix record reveals that the narrow purposes for which evidence of insurance may be admitted under Rule 411 (i.e., witness bias or prejudice; agency, ownership, or control; or a party's poverty, inability to pay, or financial status) were not, nor claimed to be, present in this case. Nonetheless, Mr. Ford was questioned extensively concerning Safeco's delay in communicating with Mr. Jenkins after the accident and its decision not to provide Mr. Jenkins with a rental vehicle after it determined that its insured, Ms. Jordan, was at fault for the accident. To be clear, the evidence of insurance introduced at the trial on damages was not a mere mention of its existence nor was it raised in a manner that was likely harmless. *See Reed v. Wimmer*, 195 W. Va. 199, 208, 465 S.E.2d 199, 208 (1995). Even a cursory review of the appendix record demonstrates that the contrary was true. And, if there was any question as to the prominent and highly prejudicial role that Mr. Ford's testimony played at what should have been a straightforward trial on respondents' damages, the jury itself answered it by asking the circuit court during its deliberations, "Why are the defendants on trial for a lawsuit when we feel it should be the insurance company[?]"

In syllabus point three of *Reed*, we instructed that,

[w]here evidence of insurance is wrongfully injected at a trial, its prejudicial effect will be determined by applying the

22

standard set out in Rule 103(a) of the West Virginia Rules of Evidence. In addition to the possibility that the jurors are already aware of the existence of insurance, the trial court should consider the relative strength of each of the parties['] case or the lack of it, whether the jury was urged by counsel or the witness to consider insurance in deciding the issue of negligence or damages, whether the injection of insurance was designed to prejudice the jury, whether the mention of insurance was in disregard of a previous order, and whether a curative instruction can effectively dissipate any resulting prejudice.

195 W. Va. at 208, 465 S.E.2d at 208.

Here, Mr. Jordan and Ms. Jordan both testified to having no knowledge concerning whether Safeco paid Mr. Jenkins for his vehicle or furnished him with a rental vehicle. In our view, respondents' purpose of thereafter eliciting extensive testimony from Mr. Ford concerning Safeco's conduct relative to Mr. Jenkins's vehicle was to urge the jury to consider insurance in deciding respondents' damages and to otherwise prejudice the jury, purposes that are expressly prohibited under *Reed*.

We are further of the belief that, in the context of an action for damages against an at-fault driver, respondents sought to recover damages from the driver's insurance carrier for its perceived bad faith in settling Mr. Jenkins's claim – specifically, the failure to provide Mr. Jenkins with a rental vehicle. Thus, in addition to violating Rule 411, the eliciting of Mr. Ford's testimony for the purpose of weighing respondents' loss of use damages was, at its core, an effort to recover for Safeco's alleged unfair claims settlement practice relative to Mr. Jenkins's damaged vehicle. However, statutory third-party claims for bad faith settlement practices are expressly prohibited under West Virginia

23

law. *See* W. Va. Code § 33-11-4a(a) (2005) ("A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice. . . . A third-party claimant may not include allegations of unfair claims settlement practices in any underlying litigation against an insured.").[18] *See also State ex rel. Nationwide Ins. Co. v. Kaufman*, 222 W. Va. 237, 244 n.8, 658 S.E.2d 728, 735 n.8 (2008). Likewise, West Virginia does not recognize a third-party claim against an insurance carrier for the common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty. *See* Syl., *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W. Va. 430, 504 S.E.2d 893 (1998).[19]

---

[18] "A third-party claimant's sole remedy against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint with the Commissioner in accordance with [West Virginia Code 33-11-4a(b)]." W. Va. Code § 33-11-4a(a), in part. *See also* 114 CS.R. § 76-1 through -9 (effective April 27, 2006).

[19] We have explained that

> the common law duty of good faith and fair dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship. In the absence of such a relationship there is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance carriers toward third-party claimants.

*Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W. Va. 430, 434, 504 S.E.2d 893, 897 (1998).

We strongly caution that the trial on remand should take a different, more direct path. Respondents' claim against Ms. Jordan and her father was for damages that respondents sustained as the result of Ms. Jordan's negligent operation of her vehicle when it collided with Mr. Jenkins's vehicle. Respondents' claimed damages were for medical expenses, lost wages, loss of use of the vehicle, aggravation and inconvenience, and Mrs. Jenkins's loss of consortium, which respondents were required to prove by a preponderance of the evidence. In a run-of-the-mill car wreck case such as this one, such damages cannot be proven with evidence that the at-fault driver's insurance carrier was mean, nasty, or unfair in settling or adjusting the injured party's claim. Simply put, at the trial following remand, respondents should not be permitted to make an end run around the law prohibiting third-party bad faith claims. Therefore, we caution that evidence of the Jordans' insurance and of Safeco's alleged bad faith in the settlement of Mr. Jenkins's claim should be excluded.

### Safeco's Appeal – Appeal No. 19-0899

We now turn to Safeco's appeal of the punitive damages awarded to respondents for its conversion of Mr. Jenkins's vehicle.[20] Safeco argues that the circuit court erred in denying its post-trial motions for judgment notwithstanding the verdict and for a new trial relative to punitive damages and motion to reduce the punitive damages awarded. It asserts that (1) the evidence at trial did not satisfy the "clear and convincing"

---

[20] Safeco does not appeal the jury's finding that it converted Mr. Jenkins's vehicle.

legal standard required for an award of punitive damages; (2) alternatively, the punitive damages verdict was against the clear weight of the evidence and was based upon "claim handling" evidence improperly admitted during the compensatory phase of the trial; and (3) also in the alternative, the punitive damages award was excessive and should have been significantly reduced.

### *Evidence supporting a punitive damages award*

Though raised in the alternative, Safeco's first two assignments of error include issues that are related, and so we will address them together. Safeco argues that the circuit court erred in admitting evidence of Safeco's alleged failure to use good faith in the settlement of Mr. Jenkins's claim for damage to his vehicle caused by Safeco's insured. Safeco contends that not only was this evidence not relevant to respondents' conversion claim because it occurred after the vehicle was converted, but also, for reasons similar to those previously discussed in connection with the Jordans' appeal, it was evidence of "claim handling" and, thus, inadmissible. In that same vein, Safeco argues that Mr. Jenkins's testimony concerning Safeco's refusal to "even negotiate on the price with me," and argument by respondents' counsel that "instead of negotiating or paying it or whatever, we're talking a thousand dollars difference, they told him that the amount they thought it was worth was non-negotiable, take it or leave it," at its core, was "impermissibly 'dress[ing] a bad faith claim up as something else' and 'using this to say Safeco acted in bad faith,' not 'Safeco stole the car[.]'" According to Safeco, Mr. Jenkins's testimony that

26

Safeco's alleged failure to use good faith in the settlement of his claim "made him feel angry, frustrated and taken advantage of" should have been excluded.

Further, Safeco argues that, in the absence of this inadmissible evidence, the jury's finding that it acted "with actual malice toward [respondents], or a conscious, reckless and outrageous indifference to the health, safety and welfare of others" was not proven by clear and convincing evidence, the required legal standard. Safeco argues that, at best, the "dubious string of mistakes" concerning who authorized the vehicle to be moved upon which the jury found conversion does not equate to "clear and convincing evidence" of "actual malice" or "a conscious, reckless and outrageous indifference to the health, safety and welfare of others" for purposes of awarding punitive damages.

Respondents counter that there was clear and convincing evidence presented at trial to support an award of punitive damages against Safeco for the conversion of Mr. Jenkins's vehicle, and that, in this Court's appellate review, though plenary, it is bound to view the evidence at trial in the light most favorable to the Jenkins to "determine whether the evidence was such that a reasonable trier of fact might have reached the decision" to award punitive damages.[21] Respondents argue that evidence of Safeco's alleged bad faith in the settlement of his claim was relevant to their intentional tort claims of trespass and conversion – that is, evidence of "how they did it and why they did it, including conduct that may be characterized as claims handling, is relevant to prove the case, especially when

---

[21] *Fredeking*, 224 W. Va. 1, 680 S.E.2d 16, syl. pt. 2.

scienter and state of mind . . . [were] necessary and relevant requirement[s] for [r]espondents to prove for entitlement to punitive damages[.]" Further, respondents contend that the rules of evidence, rather than West Virginia Code § 33-11-4a, "control what evidence is relevant and probative for admission purposes."

We agree with respondents. First, the evidence of Safeco's conduct in the settling of Mr. Jenkins's property damage claim was, under the particular facts of this case, relevant to prove Safeco's motives in converting the vehicle for purposes of demonstrating that respondents were entitled to an award of punitive damages. The theory of respondents' case was that Safeco arranged for Mr. Jenkins's vehicle to be removed from Hitt's Garage in order to put a stop to the storage costs that Safeco was obliged to pay and to pressure Mr. Jenkins into accepting Safeco's offer of settlement for the vehicle. We have no hesitation in concluding that Safeco's conversion of the vehicle, for which respondents had a legitimate claim, occurred in connection with Safeco's conduct in the settlement of Mr. Jenkins's property damage claim for that same vehicle.

Viewing the evidence in the light most favorable to respondents, in its January 15, 2017, letter to Mr. Jenkins, Safeco advised that it had "set up a tow . . . to pick up the vehicle" "*[i]f* you decide you do not want to keep the vehicle[.]" (Emphasis added). However, before Mr. Jenkins had the opportunity to inform Safeco that he wished to keep the vehicle, Safeco released it, had it transported 120 miles away without Mr. Jenkins's consent or knowledge so that Safeco would no longer be responsible for paying the cost of storing it, and then did not tell Mr. Jenkins for another eight days. Importantly, the January

28

15, 2017, letter included Safeco's initial (low) offer of settlement for the damaged vehicle. The fact that Mr. Jenkins did not open the letter (and learn of the settlement offer) until after the vehicle was converted is of no moment and does not render that portion of the letter irrelevant to Mr. Jenkins's claim that Safeco acted with ill motives when it wrongfully took his vehicle and then never returned, or offered to return, it to him. Clearly, the evidence of Safeco's "claim handling" was intertwined with the evidence relating to the conversion.

We have held that "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts." Syl. Pt. 7, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994). Further, "Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant." Syl. Pt. 4, *Gable v. Kroger Co.*, 186 W. Va. 62, 410 S.E.2d 701 (1991). The evidence about which Safeco complains – including Safeco's post-conversion conduct relative to the settlement of Mr. Jenkins's property damage claim – was, under the unique facts of this case, relevant to show the jury that Safeco acted with "actual malice" towards Mr. Jenkins or with a "conscious, reckless and outrageous indifference to the health, safety and welfare of others" such that punitive damages were warranted. *See* W. Va. Code § 55-7-29(a) [2015].[22] Simply put, the jury was

_____

[22] As will be discussed *infra*, West Virginia Code § 55-7-29 [2015], "[l]imitations on punitive damages," was enacted in 2015. Subsection (a) clarifies the type of conduct

Continued . . .

entitled to hear the full story surrounding Safeco's wrongful taking of the vehicle. "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 3, *Roof Service of Bridgeport, Inc. v. Trent*, -- W. Va. --, 854 S.E.2d 302 (2020). Accordingly, we do not find that the circuit court abused its discretion in admitting this evidence during the compensatory phase of the trial.

Next, Safeco argues that respondents failed to establish, by clear and convincing evidence, that the damages they suffered were the result of conduct carried out by Safeco with "actual malice" towards Mr. Jenkins or with a "conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code 55-7-29(a). Safeco contends that the evidence of conversion presented at trial showed that it did not move, or hire the company that moved, the vehicle; that both Safeco's and Copart's business records indicated that Safeco was uncertain whether Mr. Jenkins had released the vehicle for transport; and that it was a representative from Hitt's Garage (and not Safeco) who released the vehicle. According to Safeco, this evidence fails to meet the requisite legal standard of proof for the entitlement of punitive damages.

We find no error. As a threshold matter, Safeco's arguments presuppose that evidence of its conduct relative to the settlement of Mr. Jenkins's damaged vehicle should

---

that warrants consideration of punitive damages and also modifies the requisite standard of proof.

30

not be considered for purposes of determining whether respondents met the requisite standard of proof for a punitive damages award. However, we have established that this evidence was relevant to prove Safeco's malevolent motives for removing the vehicle and then never returning, or offering to return, it. The jury was thus entitled to weigh this evidence. Additionally, the jury heard evidence that Safeco advised Mr. Jenkins that it would not move the vehicle without first hearing from him as to whether he intended to keep it but then moved it without his permission or knowledge. Safeco waited more than a week to inform him that his vehicle was no longer at Hitt's Garage. And, although Safeco characterizes the events leading up to the conversion as simply a string of mistakes or misunderstandings, the jury also heard evidence that Safeco attempted to shift the blame to other actors, even going so far as to falsify business records to further that narrative.[23] "Credibility determinations are the prerogative of the jury and not an appellate court. Moreover, on review, this Court will not weigh evidence. Our review, conducted on a cold record, is not a tool to replace the finding of the jury with our own judgment." *State v. Vilela*, 238 W. Va. 11, 36, 792 S.E.2d 22, 25 (2016). We have held that "'[i]t is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed.' Syl. Pt. 2, *Skeen v. C and G Corp.*, 155

---

[23] See n.5, *supra.*

W. Va. 547, 185 S.E.2d 493 (1971)." Syl. Pt. 5, *Grimmett v. Smith*, 238 W. Va. 54, 792 S.E.2d 65 (2016).

Viewing the evidence in the light most favorable to respondents, we will not disturb the jury's finding that Safeco acted with actual malice or a conscious, reckless, and outrageous indifference to the health, safety and welfare of others. We, therefore, affirm the circuit court's order denying Safeco's motion for judgment notwithstanding the verdict and for a new trial.

### *Excessiveness of punitive damages award and W.Va. Code § 55-7-29 [2015]*

Finally, we turn to the question of whether the circuit court erred in failing to grant Safeco's motion to reduce the $60,000 punitive damage award. Relevant to this assignment of error is West Virginia Code § 55-7-29(c), which was enacted in 2015 but which we have not yet had an occasion to consider. Before we address Safeco's argument that the punitive damages award was excessive and should have been substantially reduced, we will generally review the statute in tandem with our case law on punitive damages up to this point.

West Virginia Code § 55-7-29, "[l]imitations on punitive damages,"[24] provides:

> (a) An award of punitive damages may only occur in a civil
> action against a defendant if a plaintiff establishes by clear and

---

[24] We do not address the question of whether West Virginia Code § 55-7-29 is constitutional because the issue is not presently before us.

convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

(b) Any civil action tried before a jury involving punitive damages may, upon request of any defendant, be conducted in a bifurcated trial in accordance with the following guidelines:[25]

(1) In the first stage of a bifurcated trial, the jury shall determine liability for compensatory damages and the amount of compensatory damages, if any.

(2) If the jury finds during the first stage of a bifurcated trial that a defendant is liable for compensatory damages, then the court shall determine whether sufficient evidence exists to proceed with a consideration of punitive damages.

(3) If the court finds that sufficient evidence exists to proceed with a consideration of punitive damages, the same jury shall determine if a defendant is liable for punitive damages in the second stage of a bifurcated trial and may award such damages.

(4) If the jury returns an award for punitive damages that exceeds the amounts allowed under subsection (c) of this section, the court shall reduce any such award to comply with the limitations set forth therein.

(c) The amount of punitive damages that may be awarded in a civil action may not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater.

(Footnote added).

---

[25] We need not discuss the pretrial procedural step of bifurcation at length. On its face, it does not materially change what has traditionally been a trial court's discretionary authority "to order a separate trial of any claim" or "of any separate issue or of any number of claims" "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy[.]" W. Va. R. Civ. P. 42(a). *See State ex rel. Tinsman v. Hott*, 188 W. Va. 349, 424 S.E.2d 584 (1992).

As previously noted, West Virginia Code § 55-7-29(a) pertains to the type of conduct that is required to justify an award of punitive damages. *See* Syl. Pt. 7, in part, *Alkire v. First Nat. Bank of Parsons*, 197 W. Va. 122, 475 S.E.2d 122 (1996) ("Our punitive damage jurisprudence includes a two-step paradigm: first, a determination of whether the conduct of an actor toward another person entitles that person to *a* punitive damage award . . . ; second, if a punitive damage award is justified, then a review is mandated to determine if *the* punitive damage award is excessive . . . ." (emphasis in original)).

West Virginia's long history of punitive damages began with this Court's decision in *Mayer v. Frobe*,[26] which characterized that conduct as follows: "[i]n actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, . . . the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous." *Id.* at Syl. Pt. 4. *See Raines v. Faulkner*, 131 W. Va. 10, 17, 48 S.E.2d 393, 397 (1947) (where a defendant's conduct was "willfully committed with such reckless, wanton and criminal indifference and disregard of plaintiff's rights[,] . . . the jury could infer malice therefrom, as a basis for allowing punitive damages"). We later expanded "the punitive damages definition of malice . . . to include not only mean-spirited conduct, but also extremely negligent conduct that is likely to cause harm." *TXO Prod. Corp. v. Alliance Res. Corp.*, 187 W. Va. 457, 474, 419 S.E.2d 870, 887 (1992), *aff'd*, 509 U.S. 443 (1993).

---

[26] 40 W. Va. 246, 22 S.E. 58 (1895).

34

However, with the enactment of West Virginia Code § 55-7-29(a), the Legislature clarified the type of conduct for which a plaintiff may recover punitive damages as "conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." And, whereas previously, under our caselaw, a plaintiff needed only to prove an entitlement to punitive damages by "a preponderance of the evidence," West Virginia Code § 55-7-29(a) now requires that it be proved "by clear and convincing evidence."[27] *Id.* Given this modification of both the type of conduct for which a jury may assess punitive damages and the requisite standard of proof therefor, we now hold that, pursuant to West Virginia Code § 55-7-29(a), an award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual

---

[27] Requiring "a preponderance of the evidence" standard of proof was consistent with the standard of proof required in most civil cases. *See Goodwin v. Thomas*, 184 W. Va. 611, 403 S.E.2d 13 (1991); *Mutafis v. Erie Ins. Exch.*, 174 W. Va. 660, 674 n.15, 328 S.E.2d 675, 689 n.15 (1985). *See also Campbell v. Boston Scientific Corp.*, 882 F.3d 70, 81 (4th Cir. 2018) (holding that "a correct statement of West Virginia [punitive damages] law at the time of trial" was that "[v]arious trial courts in West Virginia had applied the preponderance-of-the-evidence standard, and the West Virginia Supreme Court of Appeals had affirmed such decisions"). With West Virginia Code 55-7-29(a), the Legislature has imposed a more stringent "clear and convincing" standard of proof. "'"[C]lear and convincing" is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established. It should be the highest possible standard of civil proof.'" *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996) (quoting *Wheeling Dollar Sav. & Trust Co. v. Singer,* 162 W. Va. 502, 510, 250 S.E.2d 369, 374 (1978) (internal citation omitted)).

malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

In this case, following the close of the evidence in the compensatory phase of the trial, the jury was instructed consistent with West Virginia Code § 55-7-29(a), and, similarly, the verdict form included a special interrogatory:

> Do you find, by clear and convincing evidence that damages suffered by Plaintiffs were the result of Defendants Liberty Mutual and/or Safeco's conduct that was done with actual malice toward the Plaintiffs, or a conscious, reckless and outrageous indifference to the health, safety and welfare of others?

Because the jury answered this question in the affirmative,[28] the bifurcated trial proceeded into the punitive damages phase and, upon its conclusion, the jury awarded respondents $60,000 in such damages. This leads us to consider Safeco's argument that the punitive damages award was excessive and that the trial court should have reduced the it.

Subsection (c) of West Virginia Code § 55-7-29 provides:

> (c) The amount of punitive damages that may be awarded in a civil action may not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater.

Safeco argues that its motion to reduce the punitive damages award should have been granted because respondents' evidence did not support an award that was sixty

---

[28] *See* discussion *supra*.

times the compensatory award of $1,000 under the factors established by this Court in *Garnes v. Fleming Landfill, Inc.*[29] and its progeny. In denying Safeco's motion, the circuit court determined that West Virginia Code § 55-7-29(c), rather than the *Garnes* factors, applies, and that "the punitive damage award was within the parameters of the statute[.]" The court concluded that because the jury's punitive damage award of $60,000 did not exceed the limitations set forth in the statute, a reduction was not warranted. Safeco argues that the circuit court's conclusion that West Virginia Code § 55-7-29(c) completely eliminates the analysis of a punitive damage award under *Garnes* and *TXO* is incorrect, pointing to several cases decided after the 2015 statute was enacted that determined that *Garnes* was still relevant to the excessiveness analysis.[30]

Respondents argue that the circuit court correctly applied the plain and unambiguous language of West Virginia Code § 55-7-29(c). They contend that "whether the compensatory damages are $1.00 or $124,999.99, the punitive damages can be up to $500,000.00 without violating the statute[,]" and, "if four times the compensatory damages are greater than $500,000.00, then it can exceed that minimum cap . . . as [$500,000.00] is the floor or minimum . . . and not a ceiling." In support of this argument, respondents rely

---

[29] 186 W. Va. 656, 413 S.E.2d 897 (1991).

[30] *See Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F.Supp.3d 837 (S.D. W.Va. 2018); *Lunsford v. Shy*, 234 W. Va. 175, 842 S.E.2d 728 (2020); *Brozik v. Parmer*, No. 18-1004, 2017 WL 65475 (W. Va. Jan. 6, 2017) (memorandum decision); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Cramer*, 237 W. Va. 60, 785 S.E.2d 257 (2016); *Richard H. v. Rachel B.*, 2019 WL 6998331 (W. Va. Dec. 20, 2019) (memorandum decision).

on *Jersey Subs, Inc. v. Sodexo America, LLC*, No. 1:18cv1191, 2019 WL 208882 (N.D. W. Va. 2019), where the court was tasked with determining whether the "amount in controversy" requirement for purposes of diversity jurisdiction was satisfied. The court observed that it could consider the plaintiff's "good faith claim for punitive damages in [its] calculation of the amount in controversy." *Id.* at \*3 (internal citation omitted). Finding that "[i]n West Virginia, punitive damages may be awarded in amounts up to $500,000 or four (4) times compensatory damages, whichever is greater[,] W. Va. Code 55-7-29(c)[,]" the court concluded that "[c]onsidering the *minimum* cap on claims for punitive damages is $500,000 and [p]laintiffs' demand for reputational harm is $20,000, the amount in controversy is satisfied." *Id.* According to respondents, *Jersey Subs* "established a floor that an award of $500,000 is authorized by the Statute regardless of the amount awarded for compensatory damages" and the phrase "'whichever is greater,'" as used in the statute, "establishes the amount that is both [c]onstitutional and statutorily available in any case where punitive damages are returned."[31]

Prior to the enactment of West Virginia Code § 55-7-29, this Court authored a string of decisions that have provided guidance to both juries and courts in the awarding and post-trial review of punitive damages because, "[w]hile States possess discretion over

---

[31] We can easily exclude respondents' wholesale reliance on *Jersey Subs* as a legitimate basis for this argument because that case cannot be read so broadly. *Jersey Subs* looked to West Virginia Code § 55-7-29(c) for the singular and very narrow question of whether the court had jurisdiction over the plaintiffs' claims, a question far from considering whether a jury's award of punitive damages was excessive.

the imposition of punitive damages, it is well established that there are procedural and

substantive constitutional limitations on these awards."[32] In syllabus point  two of *Garnes*,

we followed the dictates of the United States Supreme Court[33] and established that,

> [u]nder our system for an award and review of punitive damages awards, there must be: (1) a reasonable constraint on jury discretion; (2) a meaningful and adequate review by the trial court using well-established principles; and (3) a meaningful and adequate appellate review, which may occur when an application is made for an appeal.

 186 W. Va. 656, 413 S.E.2d 897.  We then set out factors that a jury should be instructed

to consider in making a punitive damages award. In syllabus point three of *Garnes*, we

held:

> When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:
>
> (1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.
>
> (2) The jury may consider (although the court need not specifically instruct on each element if doing so would be

---

[32] *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citing *BMW of North America, Incorporated v. Gore*, 517 U.S. 559 (1996); *Honda Motor Corp. v. Oberg*, 512 U.S. 415 (1994); *TXO, supra*; *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991)).

[33] *See Haslip, supra.*

unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5) The financial position of the defendant is relevant.[34]

(Footnote added).

It is the post-trial review of a punitive damages award – in light of West Virginia Code § 55-7-29(c) – that is at issue in Safeco's appeal. After a jury returns a punitive damages award, *Garnes* requires that the trial court make a "meaningful and adequate review" of the award. As we reiterated in *Alkire*,

[u]nder our punitive damage jurisprudence, it is imperative that the amount of the punitive damage award be reviewed in the first instance by the trial court by applying the model specified in Syllabus Points 3 and 4 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991),

---

[34] We observe that, in this case, the jury was properly instructed on the *Garnes* factors following the punitive damages phase of the bifurcated trial.

40

and Syllabus Point 15 of *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Thereafter, and upon petition, this Court will review the amount of the punitive damage award, applying the standard specified in Syllabus Point 5 of *Garnes.*

197 W. Va. at 124–25, 475 S.E.2d at 124–25, syl. pt. 5. *See also Garnes*, 186 W. Va. at 658, 413 S.E.2d at 899, syl. pt. 2.

Under the *Alkire* outline, the trial court must review the aggravating evidence supporting the punitive damages award, as set out in syllabus point three of *Garnes* (and as previously set forth herein), and, in addition, any mitigating factors that might permit it to reduce the amount of the award. *See also* Syl. Pt. 7 and 8, *Perrine v. E.I. duPont de Nemours, Inc.*, 225 W. Va. 482, 694 S.E.2d 815 (2010). Those factors are set forth in syllabus point four of *Garnes* as follows:

> When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:
>
> (1) The costs of the litigation;
>
> (2) Any criminal sanctions imposed on the defendant for his conduct;
>
> (3) Any other civil actions against the same defendant, based on the same conduct; and
>
> (4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.

41

Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the sound discretion of the trial court, any of the above factors may also be presented to the jury.

186 W.Va. 656, 413 S.E.2d 897.[35]

Additionally, *Alkire* instructs that the trial court must then review the amount of the punitive damages award for excessiveness under syllabus point fifteen of *TXO*[36]:

The outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1.

---

[35] In *BMW*, the United States Supreme Court instructed that "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." 517 U.S. at 574. *BMW* offered three guideposts to use when examining whether an award is excessive under the Due Process Clause: (1) "the degree of reprehensibility of the defendant's conduct"; (2) the ratio of punitive damages "to the actual harm inflicted on the plaintiff"; and (3) a comparison "of the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct." *Id.* at 575-83. In *Vandevender v. Sheetz*, 200 W. Va. 591, 598, 605, 490 S.E.2d 678, 685, 692 (1997), we clarified that *BMW*'s "guideposts" are "merely reiterations of factors previously[ ]adopted by this Court and the United States Supreme Court" and that the case "does not depart from existing law regarding punitive damages." 200 W. Va. 591, 605, 490 S.E.2d 678, 692.

[36] *See Alkire*, 197 W. Va. at 125, 475 S.E.2d at 125, syl. pt. 5.

However, when the defendant has acted with actual evil intention, much higher ratios are not per se unconstitutional.

187 W. Va. at 461, 419 S.E.2d at 874.

At issue in this appeal is whether the circuit court was required to examine the punitive damages award by applying the model specified in *Garnes* and *TXO* and as required by *Alkire*. Safeco contends that West Virginia Code § 55-7-29 does not eliminate the requirement that the punitive damages award be reviewed to determine if it complies with constitutional due process principles particularly where, here, the award was sixty times the compensatory award, an amount Safeco maintains is excessive. Respondents counter that the *Garnes* and *TXO* analyses no longer apply and that West Virginia Code § 55-7-29(c) dictates that the $60,000 punitive damages award must be summarily upheld because it is less than the statute's "minimum cap" of $500,000 and, effectively, is reasonable per se.

A punitive damages award that falls within "a statutory cap provides strong evidence that a defendant's due process rights have not been violated." *Romano v. U-Haul Int'l*, 233 F.3d 655, 673 (1st Cir. 2000); *see also Golson v. Green Tree Financial Servicing Corp.*, No. 00-2365, 2002 WL 27104 (4th Cir. 2002); *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249 (10th Cir. 1999). Nonetheless, "[i]t is conceivable that even awards conferred upon a carefully crafted statutory scheme governing punitive damages fail to comport with due process." *Arizona v. ASARCO LLC*, 773 F.3d 1050, 1055 (9th Cir. 2014). Thus, even where a punitive damages award is within the limitations specifically prescribed

43

by statute, courts have been required to conduct a judicial review of the award to determine whether the award is excessive or within federal constitutional boundaries. *See E.E.O.C. v. Autozone, Inc.*, 707 F.3d 824, 838 (7th Cir. 2013) (reviewing court analyzed $200,000 punitive damages award, which had been reduced from $500,000 to comply with statutory cap, under *BMW* "three guideposts" framework); *see also Golson*, 2002 WL 27104, at *5; *Romano,* 233 F.3d at 674; *Wal-Mart Stores*, 187 F.3d at 1249; *Lopez v. Aramark Uniform & Career Apparel*, 426 F.Supp.2d 914 (N.D. Iowa 2006); *T.P. v. Weiss*, 990 N.E.2d 1098 (Ohio Ct. App. 2013).

We reiterate that the guidelines set forth in *Garnes* and *TXO* provide "both procedural and substantive due process to defendants against whom punitive damages are awarded in accordance" with directives from the United States Supreme Court. *TXO*, 187 W. Va. at 474, 419 S.E.2d at 887. Therefore, even where a punitive damages award falls within the limitations set forth in West Virginia Code § 55-7-29(c), we do not stray from the charge that the circuit court must view the award "against [the] host of factors intended to assure that 'the discretion [with which punitive damages are awarded] is exercised within reasonable constraints, [and] due process is satisfied.'"[37] An analysis under the *Garnes* and *TXO* factors insures that the punitive damages awarded are "'reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its

---

[37] *Vandevender*, 200 W. Va. at 690, 490 S.E.2d at 603 (*quoting Haslip*, 499 U.S. at 20).

repetition.'"[38] Accordingly, we hold that when a punitive damages award falls within the limitations set forth in West Virginia Code § 55-7-29(c), the trial court, in the first instance, must apply the model specified in Syllabus Points 3 and 4 of *Garnes v. Fleming Landfill* and Syllabus Point 15 of *TXO*. We therefore remand this matter to the circuit court so that it may review the punitive damages award for excessiveness under the guidelines set forth in *Garnes* and *TXO*.[39]

---

[38] *Id.* (quoting *Haslip*, 499 U.S. at 21).

[39] In *Vandevender*, we observed:

> In syllabus point fifteen of *TXO*[,] we distinguished between conduct that demonstrates "extreme negligence or wanton disregard" and conduct that evinces an "actual intention to cause harm." 187 W.Va. at 461, 419 S.E.2d at 874. The significance of that distinction was our formulation of an outer limit of five to one with regard to the ratio of punitives to compensatory damages in cases that fall into the first category—that is, those cases in which the defendant's conduct registers on the scale of extreme negligence or wanton disregard. *Id.* Only in those cases where the defendant can be shown to have actually intended to cause harm is the ratio of punitives to compensatories permitted to climb higher without "rais[ing] a suspicious judicial eyebrow." *TXO,* 509 U.S. at 481, 113 S.Ct. at 2732 (O'Connor, J., dissenting).

200 W. Va. at 604, 490 S.E.2d at 691.

In a similar vein, West Virginia Code 55-7-29(a) makes a distinction between conduct carried out with "actual malice toward the plaintiff" and "a conscious, reckless and outrageous indifference to the health, safety, and welfare of others" – either being sufficient to warrant a punitive damages award. In this case, the jury answered a special interrogatory that concluded that respondents' damages "were the result of Defendants Liberty Mutual and/or Safeco's conduct that was done with actual malice toward the Plaintiffs, or a conscious, reckless and outrageous indifference to the health, safety and

Continued . . .

## IV. Conclusion

For the reasons set forth above, in Appeal No. 19-0890, the circuit court's order denying the Jordans' motion to set aside the verdict and for a new trial is reversed, and that case is remanded for a new trial. In Appeal No. 19-0899, the circuit court's order denying Safeco's motions for judgment notwithstanding the verdict and for a new trial are affirmed. However, the order denying Safeco's motion to reduce the punitive damages award is reversed, and that case is remanded for the circuit court to conduct an excessiveness analysis under the guidelines set forth in *Garnes* and *TXO*.

> Appeal No. 19-0890 – Reversed and Remanded.
>
> Appeal No. 19-0899 – Affirmed, in part, Reversed, in part, and Remanded, with directions.

---

welfare of others[.]" While the jury was not required to make a distinction between the two categories of conduct provided for in West Virginia Code § 55-7-29(a), on remand, the circuit court must determine which category Safeco's conduct fell into for the purpose of evaluating the excessiveness of the punitive damages award under *TXO*.